# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2019AP411-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin, Plaintiff-Respondent, v. Decarlos K. Chambers, Defendant-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 393 Wis. 2d 595,947 N.W.2d 648
(2020 – unpublished)

| | |
|---|---|
| OPINION FILED: | February 23, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 11, 2021 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Jeffrey A. Wagner |

JUSTICES:
ZIEGLER, J., delivered the majority opinion for a unanimous Court.
NOT PARTICIPATING:

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed by *Mark S. Rosen* and *Rosen and Holzman*, LTD., Waukesha. There was an oral argument by *Mark S. Rosen*.

For the plaintiff-respondent, there was a brief filed by *Scott E. Rosenow*, assistant attorney general; with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Scott E. Rosenow*.

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No.  2019AP411-CR
(L.C. No.  2017CF289)

STATE OF WISCONSIN              :        IN SUPREME COURT

**State of Wisconsin,**

    **Plaintiff-Respondent,**

    **v.**

**Decarlos K. Chambers,**

    **Defendant-Appellant-Petitioner.**

**FILED**

**FEB. 23, 2021**

Sheila T. Reiff
Clerk of Supreme Court

ZIEGLER, J., delivered the majority opinion for a unanimous Court.

REVIEW of a decision of the Court of Appeals.  *Affirmed.*

¶1    ANNETTE KINGSLAND ZIEGLER, J.    This is a review of an unpublished decision of the court of appeals, State v. Chambers, No. 2019AP411-CR, unpublished slip op. (Wis. Ct. App. Jun. 2, 2020), affirming the Milwaukee County circuit court's[1] judgment of conviction and order denying Decarlos Chambers' postconviction motion.  The State charged Chambers with first-degree reckless homicide with a dangerous weapon, as a party to a crime, and possession of a firearm by a person adjudicated

_____

[1] The Honorable Jeffrey A. Wagner presided.

delinquent for a felony. After a trial, a jury found Chambers guilty of the lesser-included offense of second-degree reckless homicide with a dangerous weapon, as a party to a crime, and possession of a firearm by a person adjudicated delinquent for a felony.

¶2 After Chambers' conviction, the United States Supreme Court announced its decision in McCoy v. Louisiana, 584 U.S. ___, 138 S. Ct. 1500 (2018). In McCoy, the Court held that trial counsel cannot concede a client's guilt when a client expressly asserts that the objective of the defense is to maintain innocence and the client objects to the concession of guilt. Id. at 1509. The Court also held that this error is structural, and one for which a new trial is required. Id. at 1512.

¶3 Seeking to apply McCoy to his case, Chambers filed a postconviction motion challenging his judgment of conviction on the grounds that his trial counsel conceded his guilt during closing arguments contrary to his objective of maintaining absolute innocence and over his objections. The circuit court disagreed with Chambers and held that Chambers' trial counsel did not concede his guilt during closing argument. The court of appeals agreed, holding that Chambers' counsel did not violate the principles set forth in McCoy. We also agree.

¶4 Because we conclude that Chambers' counsel never conceded his guilt during closing arguments, Chambers' McCoy claim fails. Accordingly, we affirm.

2

I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶5 On January 17, 2017, the State filed a criminal complaint against Chambers. The complaint alleged two counts. The first count alleged that Chambers committed first-degree reckless homicide with a dangerous weapon, as a party to a crime, contrary to Wis. Stat. §§ 940.02(1) and 939.05 (2017-18).[2] Specifically, the complaint alleged that Chambers "as a party to a crime, did recklessly cause the death of Kyle Tymone Weary, another human being, under circumstances which showed utter disregard for human life" "while using a dangerous weapon." The second count, possession of a firearm by an adjudicated delinquent, alleged that Chambers possessed a firearm despite being adjudicated delinquent of an act that would constitute a felony, contrary to Wis. Stat. § 941.29(1m)(bm). That same day, Chambers was arrested and made his initial appearance before the circuit court.

¶6 On January 25, 2017, the circuit court held a preliminary hearing, found probable cause for the charges, and bound Chambers over for trial. On February 7, 2017, the court arraigned Chambers. The State filed its Information, charging Chambers with the two counts contained in the criminal complaint. Chambers pled not guilty to both counts.

¶7 On August 14, 2017, Chambers' jury trial commenced. After both sides rested their arguments, the circuit court began

---

[2] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

3

a discussion with the parties regarding jury instructions. The State requested that the court instruct the jury as to the lesser-included offense of second-degree reckless homicide. Chambers did not object. Chambers' trial counsel requested time to discuss the proposed jury instructions with Chambers prior to the court finalizing those instructions. After a discussion off the record, Chambers' trial counsel confirmed that Chambers agreed with the proposed jury instructions, including the instruction for second-degree reckless homicide.

¶8 The following day, August 16, 2017, the circuit court instructed the jury and both parties made their closing arguments. As part of her closing argument, Chambers' trial counsel stated that because "whoever shot [Kyle Weary]" did so "at night, in the dark, in the rain, a distance away," the jury "should consider" second-degree reckless homicide. She concluded the closing argument by insisting that because there was reasonable doubt based on the evidence, the jury "should find [Chambers] not guilty."

¶9 The court then submitted the case to the jury, which began its deliberation. Later that afternoon, the jury returned its verdict. The jury found Chambers guilty of the lesser-included offense of second-degree reckless homicide with a dangerous weapon, as a party to a crime, for count one and guilty of possession of a firearm by a person adjudicated delinquent for a felony for count two. The court sentenced Chambers to ten years of initial confinement and eight years of extended supervision on count one and two years of initial

4

confinement and three years of extended supervision on count two, with the sentences to run consecutively.

¶10 On December 12, 2018, Chambers filed his motion seeking postconviction relief. In this motion, he claimed that his trial counsel conceded his guilt against his expressed intent to maintain absolute innocence, contrary to the new rule the United States Supreme Court announced in McCoy, 138 S. Ct. 1500 (2018). Specifically, Chambers argued that when his trial counsel stated that the jury "should consider" second-degree reckless homicide, it was a concession of his guilt on the lesser-included offense. Because this error is structural, Chambers asserted that he must receive a new trial to remedy the error. The circuit court denied Chambers' postconviction motion, holding that Chambers' trial counsel never conceded his guilt at trial.

¶11 Chambers appealed both his judgment of conviction and the circuit court's order denying his postconviction motion. The court of appeals affirmed the circuit court. Chambers, No. 2019AP411-CR, ¶5. The court of appeals held that, "[t]rial counsel's closing argument, read in its entirety, shows that trial counsel did not concede Chambers' guilt." Id.

¶12 On June 30, 2020, Chambers petitioned this court for review. We granted review.

5

## II. STANDARD OF REVIEW

¶13 Chambers alleges that his trial counsel conceded his guilt in closing argument, violating his right to "the Assistance of Counsel for his defence," which the Sixth Amendment to the United States Constitution guarantees. "This court independently reviews whether deprivation of a constitutional right has occurred." State v. Jones, 2010 WI 72, ¶23, 326 Wis. 2d 380, 797 N.W.2d 378.

## III. ANALYSIS

¶14 We begin our analysis by discussing the Sixth Amendment and McCoy. We then turn to the merits of Chambers' McCoy claim in this case.[3]

### A. The Sixth Amendment and McCoy

¶15 The Sixth Amendment to United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This right "speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant." McCoy, 138 S. Ct. at 1508 (quoting Faretta v. California, 422 U.S. 806, 820 (1975)). While counsel "is still an assistant,"

---

[3] The State argued that Chambers forfeited his right to raise a McCoy claim. Because we reject Chambers' claim on the merits, we decline to address the State's forfeiture argument. See Maryland Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 ("Issues that are not dispositive need not be addressed.").

"[t]rial management is the lawyer's province." Id. This means that "[c]ounsel provides his or her assistance by making decisions such as 'what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence.'" Id. (quoting Gonzalez v. United States, 553 U.S. 242, 248 (2008)). While counsel makes the decisions regarding trial management, some decisions "are reserved for the client——notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo appeal." Id.

¶16 The United States Supreme Court has previously held that "[w]hen counsel informs the defendant of the strategy counsel believes to be in the defendant's best interest and the defendant is unresponsive, counsel's strategic choice is not impeded by any blanket rule demanding the defendant's explicit consent." Florida v. Nixon, 543 U.S. 175, 192 (2004). In Nixon, Nixon's counsel repeatedly explained that the litigation strategy he was pursuing was to concede guilt and focus on the penalty phase of the trial——attempting to avoid a death penalty sentence. Id. at 181. "Nixon was generally unresponsive" to these explanations and neither consented nor objected to his counsel's strategy. Id. Counsel followed his proposed litigation strategy, but Nixon was still found guilty and sentenced to death. Id. at 184. Nixon appealed, arguing that his counsel provided ineffective assistance because his counsel never obtained his express consent to a strategy of conceding guilt. Id. at 186-87. The United States Supreme Court

7

disagreed and concluded that when the defendant "neither consents nor objects" to a strategy of conceding guilt, such decisions are within the scope of counsel's strategic choices.[4] Id. at 178.

¶17 The United States Supreme Court recently distinguished its Nixon holding. McCoy, 138 S. Ct. at 1512. In McCoy, the defendant's counsel "concluded that the evidence against McCoy was overwhelming and that, absent a concession at the guilt stage that McCoy was the killer, a death sentence would be impossible to avoid at the penalty phase." Id. at 1506 (footnote omitted). McCoy "vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt." Id. at 1505. Instead of complying with McCoy's wishes, his counsel told the jury during his opening argument that "there was 'no way reasonably possible' that [the jury] could hear the prosecution's evidence and reach 'any other conclusion than Robert McCoy was the cause of these individuals' death.'" Id. at 1506 (quoted source omitted). In his closing argument, McCoy's counsel "reiterated that McCoy was the killer" and "told the jury that he 'took [the] burden off of [the prosecutor].'" Id. at 1507 (quoted source omitted). The jury found him guilty and returned three death sentences. Id.

---

[4] The United States Supreme Court determined that such claims are subject to a standard ineffective-assistance-of-counsel analysis, pursuant to Strickland v. Washington, 466 U.S. 668, 688 (1984).

¶18 On appeal, the United States Supreme Court addressed the question of "whether it is unconstitutional to allow defense counsel to concede guilt over the defendant's intransigent and unambiguous objection." Id. at 1507. The Court held that "[a]utonomy to decide that the objective of the defense is to assert innocence" belongs in the category of decisions reserved for the defendant alone.[5] Id. at 1508. A lawyer violates that autonomy "[w]hen a client expressly asserts that the objective of 'his defence' is to maintain innocence of the charged criminal acts" and the lawyer acts contrary to that objective. Id. at 1509 (quoting U.S. Const. amend VI). The Court expounded upon this holding:

> If a client declines to participate in his defense, then an attorney may permissibly guide the defense pursuant to the strategy she believes to be in the defendant's best interest. Presented with express statements of the client's will to maintain innocence, however, counsel may not steer the ship the other way.

Id. The Court concluded that this error was structural and therefore subject to neither the Court's ineffective-assistance-of-counsel jurisprudence nor ordinary harmless-error analysis. Id. at 1510-11.

¶19 Distinguishing McCoy's facts from Nixon's facts, the Court explained that Nixon's counsel did not violate Nixon's autonomy because Nixon never asserted that his desired defense

---

[5] We note that the United States Supreme Court made this holding specifically in the context of a capital murder case. See McCoy v. Louisiana, 584 U.S. ___, 138 S. Ct. 1500, 1505 (2018). We assume, without deciding, that this holding applies equally in non-capital murder cases.

9

objective was absolute innocence.   Id. at 1509-10.   Instead, "Nixon 'was generally unresponsive' during discussions of trial strategy, and 'never verbally approved or protested' counsel's proposed approach."   Id. at 1509 (citing Nixon, 543 U.S. at 181).   While Nixon complained about the admission of guilt only after trial, Nixon, 543 U.S. at 185, McCoy opposed his counsel's admission of guilt "at every opportunity."   McCoy, 138 S. Ct. at 1509.   Ultimately in McCoy, the Court held that because his counsel conceded his guilt against his insistent objections, McCoy's Sixth Amendment rights were violated, and McCoy was granted a new trial due to the error.   Id. at 1512.[6]

¶20 Accordingly, to succeed on a McCoy claim, the defendant must show that he or she "expressly assert[ed] that the objective of 'his defence' is to maintain innocence of the charged criminal acts" and the lawyer did not "abide by that objective and [overrode] it by conceding guilt."   Id. at 1509; see, e.g., Atwater v. State, 300 So. 3d 589, 591 (Fla. 2020) (dismissing a McCoy claim because the defendant did not "express[] to counsel that his objective was to maintain his innocence or that he expressly objected to any admission of guilt"), petition for cert. filed, (U.S. Jan. 13, 2021) (No. 20-6851); United States v. Felicianosoto, 934 F.3d 783, 787 (8th Cir. 2019) (analyzing the record to determine the defendant

---

[6] McCoy holds that in order to prove a Sixth Amendment violation, a defendant must have expressed to his counsel his clear opposition to admission of his guilt.  We read McCoy as not necessarily requiring a defendant to contemporaneously object on the record in order to preserve that claim.

did not maintain absolute innocence), cert. denied, 140 S. Ct. 2644 (2020); Merck v. State, 298 So. 3d 1120, 1121 (Fla. 2020) (holding that counsel did not concede guilt at trial), petition for cert. filed, (U.S. Jan. 8, 2021) (No. 20-6806); United States v. Wilson, 960 F.3d 136, 143-44 (3rd Cir. 2020) (describing the kinds of concessions reserved for the defendant under McCoy), cert. denied, __ S. Ct. __, 2021 WL 78300 (2021); Truelove v. State, 945 N.W.2d 272, 276 (N.D. 2020) (holding that the defendant did not meet either requirement of a McCoy claim).

### B. Chambers' McCoy Claim

¶21 Chambers argues that his trial counsel violated his right to autonomy, recognized in McCoy, necessitating that he receive a new trial.[7] Chambers asserts that when his trial counsel told the jury that it should "consider" second-degree reckless homicide instead of first-degree reckless homicide, his trial counsel conceded his guilt to the lesser-included offense of second-degree reckless homicide. We conclude that Chambers'

---

[7] We note that the parties agree that McCoy announced a new rule for criminal prosecutions and must be applied retroactively to Chambers' case as it is before us on direct review. See Griffith v. Kentucky, 479 U.S. 314, 328 (1987) ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past."); State v. Koch, 175 Wis. 2d 684, 694, 499 N.W.2d 152 (1993) (applying the Griffith rule to Wisconsin).

11

trial counsel did not concede his guilt during closing argument.[8] Accordingly, Chambers' McCoy claim fails.

¶22 Chambers argues that the following statement in his trial counsel's closing argument conceded his guilt:

> But the jury instruction tells you to all see if you can agree on first-degree reckless. And only if you can't, then you should go to the second part, which is second-degree reckless, right?
>
> Second-degree reckless is also criminally reckless conduct. Which I think everybody would agree that should you have a gun, shooting in the direction of a house or person, is criminally reckless conduct.
>
> And I think that under these circumstances, the second-degree reckless -- that does not include utter disregard for human life is something you should consider. There's an actual description.
>
> And the jury instructions from the judge say the difference between first and second-degree reckless homicide is that first-degree requires a proof of one additional element. Circumstances of conduct showed utter disregard for human life.

---

[8] Because the record here demonstrates that Chambers' counsel did not concede his guilt, we assume, without deciding, that Chambers "expressly assert[ed] that the objective of 'his defence' is to maintain innocence of the charged criminal acts," satisfying the first requirement of a McCoy claim. 138 S. Ct. 1509. Additionally, because of this assumption, we need not address the situation of when the State and defendant disagree about whether the defendant "expressly assert[ed] that the objective of 'his defence' is to maintain innocence of the charged criminal acts," as a McCoy claim requires. Id. Compare United States v. Felicianosoto, 934 F.3d 783, 787 (8th Cir. 2019) (declining to remand the case for an evidentiary hearing) with State v. Howard, No. 2019AP1384-CR, ¶42, unpublished slip op. (Wis. Ct. App. Dec. 15, 2020) (per curiam) (remanding the case for an evidentiary hearing to determine whether McCoy was violated).

12

> So again, shooting a gun in the dark, when somebody is shooting a gun already, and it's clear that the ShotSpotter evidence is that there is overlapping shots, right? It's not like one person or one gun shoots and then stops, and then another gun shoots, does not support first-degree reckless homicide.

(Emphasis added.) Chambers argues that when his trial counsel stated that the jury should "consider" second-degree reckless homicide, she conceded his guilt. However, in reviewing her entire closing argument, we conclude that Chambers' trial counsel never conceded Chambers' guilt.[9]

¶23 Chambers primarily focuses his argument on his trial counsel's use of the word "consider." However, the language that trial counsel used matches the language of the jury instruction the court read. Prior to Chambers' closing argument, the circuit court instructed the jury. As part of those jury instructions, the court told the jury that it must consider whether the defendant was guilty of second-degree reckless homicide. Specifically, the court stated the following:

> The defendant in this case is charged with first-degree reckless homicide as a party to a crime. You must first consider whether the defendant is guilty of that offense.

> If you're not satisfied the defendant's guilty of first-degree reckless homicide, as a party to a crime,

---

[9] Because we conclude that Chambers' trial counsel did not concede his guilt during closing argument, we do not address the State's argument that counsel can maintain absolute innocence while simultaneously suggesting that, in the alternative to absolute innocence, the jury should consider a lesser-included offense if the jury believes the defendant to be guilty.

13

you must <u>consider</u> whether or not the defendant is guilty of second-degree reckless homicide, as a party to a crime, which is a less serious degree of homicide.

. . . .

If you are satisfied beyond a reasonable doubt that the defendant or a person the defendant was a party to a crime with caused the death of Kyle Weary by criminally reckless conduct, and that the circumstances of the conduct showed utter disregard for human life, you should find the defendant guilty of first-degree reckless homicide.

If you are not so satisfied, you must not find the defendant not [sic] guilty of first-degree reckless homicide, party to a crime, and you should <u>consider</u> whether the defendant is guilty of second-degree reckless homicide, as a party to a crime, in violation of 940 of the Criminal Code of Wisconsin, which is a lesser included offense of first-degree reckless homicide as a party to a crime.

(Emphases added.)[10]  Accordingly, when counsel stated that the jury should "consider" second-degree reckless homicide, she was

---

[10] This jury instruction is nearly identical to the pattern jury instruction for first- and second-degree reckless homicide. <u>See</u> Wis. JI—Criminal 1022 (2015). The pattern jury instruction provides:

The defendant in this case is charged with first degree reckless homicide, and you must first <u>consider</u> whether the defendant is guilty of that offense.  If you are not satisfied that the defendant is guilty of first degree reckless homicide, you must <u>consider</u> whether or not the defendant is guilty of second degree reckless homicide which is a less serious degree of criminal homicide.

. . . .

If you are satisfied beyond a reasonable doubt that the defendant caused the death of (name of victim) by criminally reckless conduct and that the circumstances of the conduct showed utter disregard

14

merely restating the jury instruction the circuit court gave earlier that morning.[11]

¶24 If the similarity between the jury instruction and what Chambers' trial counsel said were all we had to review in this case, it may be a more difficult decision. We have more than just this similarity in this case. We have all of Chamber's trial counsel's closing argument, which when read in its entirety (as the jury would have heard it), unquestionably shows that Chambers' trial counsel never conceded his guilt. Immediately preceding the statements that Chambers believes show the concession, his trial counsel made the following statement:

---

> for human life, you should find the defendant guilty of first degree reckless homicide.
>
> If you are not so satisfied, you must not find the defendant guilty of first degree reckless homicide, and you should consider whether the defendant is guilty of second degree reckless homicide in violation of § 940.06 of the Criminal Code of Wisconsin, which is a lesser included offense of first degree reckless homicide.

Wis. JI—Criminal 1022, at 1, 3 (2015) (emphases added).

[11] Chambers specifically consented to the inclusion of this jury instruction that used the word "consider." If he felt that instructing the jury to "consider" second-degree reckless homicide was a concession of guilt, he could have objected to the jury instruction at that time. Had he done so, the circuit court, as well as appellate courts, could examine the jury instruction to determine if it accurately restates that law or is constitutionally infirm. See, e.g., State v. Trammell, 2019 WI 59, ¶15, 387 Wis. 2d 156, 928 N.W.2d 564 (reviewing whether Wis. JI—Criminal 140 (2017) misstates the law or is constitutionally infirm).

15

In this case, though, whoever shot that person who made the bad decision, Kyle Weary, whoever shot him is at night, in the dark, in the rain, a distance away. You heard the medical examiner say it's not a close-up shot. And it is under circumstances that are so confusing and so not clearly utter disregard for human life that I don't agree that the first-degree reckless homicide is a reasonable verdict.

She also concluded the argument asserting Chambers' absolute innocence, stating the following:

That's what he said at the beginning. Not guilty. Denied each and every element of the crime.

In this case, there is information that if believed, if it is found to be credible, reliable evidence might support the fact that Decarlos Chambers was the shooter. But that's the problem. It might support it.

And this is not a civil case where you think about who's got a little better story than the other side and balance it out. And I'm balancing my hands like the scales of justice. That's where that comes from.

In this case, you know, this is a homicide case. There are serious consequences to Mr. Chambers. This is a case where there has to be confidence beyond a reasonable doubt before there should be a conviction.

And because of the problems that I've pointed out that you all know, you all sat there and listened, had notebooks. I'm sure you'll go back there and think of some things that I [didn't] think about that are inconsistent, that don't add up, that are contradictions, that lead you to what I think is a reasonable conclusion that there's not sufficient evidence beyond a reasonable doubt to convict Decarlos Chambers.

I think that you should find him not guilty.

These statements demonstrate that Chambers' trial counsel never abandoned his position of absolute innocence. She continued to

16

advocate Chambers' absolute innocence both before and after she told the jury to "consider" second-degree reckless homicide.

¶25 When looking at the entire record, it is clear that Chambers' trial counsel never conceded his guilt. She was mirroring the language from the jury instructions and continually advocated his absolute innocence throughout her closing argument. Accordingly, Chambers' McCoy claim fails.

## IV. CONCLUSION

¶26 Because we conclude that Chambers' counsel never conceded his guilt during closing arguments, Chambers' McCoy claim fails. Accordingly, we affirm.

*By the Court.*—The decision of the court of appeals is affirmed.