COURT OF APPEALS
DECISION
DATED AND FILED

October 15, 2024

Samuel A. Christensen
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP71-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF25

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

GREGORY B. SANDERS,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: T. CHRISTOPHER DEE, Judge. *Affirmed*.

Before Donald, P.J., Geenen and Colón, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Gregory B. Sanders appeals from his judgment of conviction entered after a jury found him guilty of first-degree recklessly

endangering safety as a party to a crime. He also appeals from an order denying his postconviction motion. Based upon our review of the briefs and record, we conclude at conference that this case is appropriate for summary disposition. *See* WIS. STAT. RULE 809.21 (2021-22).[1] We summarily affirm.

¶2 Sanders' conviction stems from the shooting of J.P. in December 2016. J.P. said he was in the bedroom of his friend's apartment when three armed men entered, one of whom he knew as "Hector." J.P. stated the men took his pants and rifled through his sweatshirt, and that as the men were leaving, Hector shot him in the leg. J.P. was shown a photo array and identified Sanders as Hector, the shooter.

¶3 Police interviewed two witnesses who were at the apartment at the time of the robbery and shooting. The first witness, C.H., stated that he recognized one of the armed men and identified him as "Hector," someone he had known for about a year, but that he did not see who actually shot J.P. C.H. identified Sanders from a photo array as "Hector."

¶4 The other witness, A.L., was a teenaged girl who was in the bedroom with J.P. at the time of the shooting. She also identified Sanders from a photo array as one of the three armed men, but was not sure whether Sanders was the shooter.

¶5 Sanders was charged with first-degree recklessly endangering safety with the use of a dangerous weapon, and with being a felon in possession of a firearm. He filed a notice of alibi, stating that he was with his significant other, Ciarra Edwards, and her nine-year-old son at a hotel at the time of the shooting.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶6 The matter was initially scheduled for trial on May 1, 2017. At a status conference in April 2017, the State advised that it was going to amend the first-degree recklessly endangering safety charge to add party to a crime liability. The State reiterated that intention at a final pretrial conference held later in April 2017.

¶7 During that pretrial conference, counsel for Sanders indicated that they were having "a significant communication issue," after Sanders accused counsel on the record of lying to him and "working in concert with the State." Counsel moved to withdraw, and the circuit court granted the motion. New counsel was appointed, and the trial was rescheduled for August 2017.

¶8 On the August 2017 date, during jury selection, Sanders informed the circuit court that he was unhappy with his new counsel, calling him a "racist" and a "liar," and that he wished to proceed *pro se*. The court engaged in a thorough colloquy with Sanders, ultimately allowing him to proceed *pro se*. The trial was rescheduled for December 2017.

¶9 Despite asking to appear *pro se*, another attorney appeared on Sanders' behalf at a status conference in September 2017. That attorney informed the court that Sanders had requested his representation, but then withdrew in December 2017 for reasons unrelated to the case. New counsel was appointed, and the trial was rescheduled for January 2018.

¶10 At a pretrial conference a couple of weeks later, and just before the new trial date, Sanders' new counsel told the court that he would not be prepared for the January 2018 trial date. He explained that when he was appointed to represent Sanders in December 2017, the appointment included another unrelated case for Sanders, and he had not been aware of the time frame for trial in this case

when he was appointed. He further stated he did not have all the discovery for this case. Recognizing that "nobody could be expected to get a competent defense together that quickly," the circuit court again rescheduled the trial for April 2018.

¶11    In an outburst on the record, Sanders demonstrated that he was very upset over this delay. He again requested to proceed *pro se*. The circuit court acknowledged his request but indicated it did not have time to perform the requisite colloquy at that time due to another impending jury trial. Instead, the court stated that Sanders should "be prepared" for the colloquy at the final pretrial conference, scheduled for March 2018. At that subsequent pretrial conference, Sanders did not appear because he refused to leave his cell. Sanders did appear at the next hearing held in early April 2018, but said nothing about representing himself.

¶12    On the first day the trial in April 2018, the circuit court asked Sanders about his previous request to continue *pro se*. Sanders responded, "I want to proceed with [counsel] as my attorney."

¶13    Also on the first day of trial, the State proposed an amended information that added party to a crime liability to the recklessly endangering safety count, as it had advised at the pretrial conferences in April 2017. The State also sought to add an additional count of first-degree reckless injury using a dangerous weapon, as a party to a crime. The circuit court allowed the addition of party to a crime liability to the original recklessly endangering safety count, finding that there was no unfair prejudice to Sanders if the jury was allowed to consider his guilt as a "primary actor or an assisting actor" on that charge. However, the court found that adding the additional count would add "a rather important element to the entirety of this prosecution," that of great bodily harm to J.P., and denied the amendment to add that count.

4

¶14 The trial proceeded, with testimony from the victim, J.P., and the other witnesses, C.H., and A.L. J.P. again stated that Sanders, whom he knew as Hector, was the person who shot him. C.H. described the events in detail, and stated that Sanders was at the scene with a gun, although he did not know who fired the shots at J.P. A.L., who initially told police that Sanders was armed and could have been the shooter, testified at trial that Sanders was definitely not the shooter; her testimony was also conflicted as to whether Sanders was actually armed.

¶15 The detective who interviewed Sanders and conducted the photo arrays for the witnesses also testified. He stated that Sanders denied knowing either J.P. or C.H., and said that Hector "is not his nickname, and nobody calls him that." However, there was testimony from another officer who, several months before the shooting, conducted a routine traffic stop of Sanders and Ciarra Edwards—Sanders' purported alibi witness. The officer testified that Edwards referred to Sanders as "Hector" during the stop.

¶16 Sanders elected not to testify. However, the defense called the detective who had interviewed C.H. to testify regarding C.H.'s identification of Sanders. In C.H.'s statement to that detective, he said that the armed men were wearing hooded sweatshirts and therefore were difficult to identify. Sanders' counsel highlighted this testimony during closing arguments about the victim and witnesses' identification of Sanders.

¶17 The jury found Sanders guilty of recklessly endangering safety as a party to a crime, but not with the dangerous weapon enhancer. It also found Sanders not guilty of being a felon in possession of a firearm. The circuit court imposed a sentence of six years and six months of initial confinement and five years of extended supervision.

5

¶18 Sanders filed a postconviction motion alleging that: (1) the circuit court erroneously exercised its discretion in allowing an amendment to the information adding party to a crime liability; (2) Sanders was denied his right to represent himself at trial; (3) trial counsel rendered ineffective assistance in multiple ways; (4) trial counsel violated Sanders' right to assert innocence; (5) the sentencing court relied on inaccurate information; and (6) Sanders was entitled to a new trial based on newly obtained recantation evidence. The circuit court denied the motion. This appeal follows.

### I.   Claim of Error in Allowing the Amended Information

¶19 We first address Sanders' claim that the circuit court erroneously allowed the State to amend the information without notice. "We will not reverse a [circuit] court's decision to amend an information unless there was a clear or manifest misuse of discretion." *State v. Neudorff*, 170 Wis. 2d 608, 615, 489 N.W.2d 689 (Ct. App. 1992). "There is a misuse of discretion if the defendant is prejudiced by the amendment." *Id.* "Rights of the defendant which may be prejudiced by an amendment are the rights to notice, speedy trial and the opportunity to defend." *Id.*

¶20 Sanders asserts that the State failed to provide him with "actual notice" of the amendment prior to its being filed just before the trial began. However, while notice is a "key factor" to determining prejudice, *id.* at 619, there is no requirement of actual notice. *See* WIS. STAT. § 971.29(2) ("At the trial, the court may allow amendment of the complaint, indictment or information to conform to the proof where such amendment is not prejudicial to the defendant."). Rather, adequate notice is the requirement. *State v. Malcom*, 2001 WI App 291, ¶26, 249 Wis. 2d 403, 638 N.W.2d 918. As the record reflects, the State provided Sanders

with notice of its intention to add party to a crime liability to the first-degree reckless endangerment count at two separate conferences in April 2017. Therefore, Sanders was not prejudiced due to lack of notice. *See Neudorff*, 170 Wis. 2d at 615.

¶21 Sanders also argues that his opportunity to defend himself was prejudiced. He compares his case to the circumstances in *Neudorff*, where the State amended a charge of possession with intent to deliver cocaine to a charge of conspiracy to deliver. *Id.* at 611. This court held that allowing the amended charge was prejudicial to the defendant because it did not allow him sufficient notice to prepare a defense to the amended charge. *Id.* Sanders asserts that amending the charge in his case to include party to a crime liability necessitated a change in his defense, from defending himself as the actual shooter to a co-actor. However, the statements of the victim and two witnesses, who did not agree on Sanders' specific role during the incident, were available very early on in this case. As a result, the circuit court observed that adding party to a crime liability, allowing the jury to find Sanders either "the primary actor or an assisting actor," did not change the nature of the defense. As a result, the court determined that the amended charge would not prejudice Sanders. We agree.

¶22 Because Sanders has not established that he was prejudiced as a result of the amended charge, the circuit court did not err in allowing the State to amend the information just prior to trial. *See id.* at 615. Accordingly, this claim fails.

## II. *Violation of Right to Self-Representation Claim*

¶23 We next address Sanders' claim that he was denied his right to represent himself. Defendants have the right to conduct their own defense under both the Sixth Amendment of the United States Constitution and Article I, § 7 of the Wisconsin Constitution. *State v. Klessig*, 211 Wis. 2d 194, 203, 564 N.W.2d

716 (1997); *see also* ***Faretta v. California***, 422 U.S. 806, 819 (1975) (stating that although not explicitly stated in the Sixth Amendment, this right is "necessarily implied by the structure of the Amendment"). Whether a defendant's constitutional right to self-representation has been violated is a question of law, which this court reviews *de novo*. ***State v. Darby***, 2009 WI App 50, ¶13, 317 Wis. 2d 478, 766 N.W.2d 770.

¶24    A defendant who wishes to invoke the right to self-representation must "clearly and unequivocally" inform the circuit court of this decision. ***Faretta***, 422 U.S. at 835. If the defendant establishes this request clearly and unequivocally, the circuit court must then ensure that the defendant "has knowingly, intelligently and voluntarily waived the right to counsel," and that the defendant is "competent to proceed *pro se*." ***Klessig***, 211 Wis. 2d at 203. To establish these requirements, the circuit court engages in a colloquy with the defendant to confirm the defendant's understanding of the ramifications that relate to this choice. ***Id.*** at 206.

¶25    As described above, Sanders expressed on several occasions his desire to proceed *pro se*, and sought the dismissal of several of his appointed attorneys. Indeed, after one such request, the circuit court engaged in the requisite colloquy and granted Sanders' request to proceed *pro se*, only to have new counsel appear on behalf of Sanders at the next hearing, stating that Sanders had requested his representation.

¶26    Sanders' argument focuses on his request to proceed *pro se* where the circuit court indicated it did not have sufficient time to perform the colloquy immediately upon his request due to another scheduled jury trial, but stated that it would engage in the requisite colloquy at the next scheduled hearing, where Sanders refused to appear. Sanders claims this delay violated his right to self-representation;

8

however, he provides no authority for the premise that a circuit court is not permitted to engage in the colloquy at a subsequent hearing as its calendar permits. In fact, the circuit court has broad discretion to manage its calendar. *See Teff v. Unity Health Plans Ins. Corp.*, 2003 WI App 115, ¶29, 265 Wis. 2d 703, 666 N.W.2d 38.

¶27 Furthermore, on the first day of trial, Sanders unequivocally informed the circuit court of his desire to proceed *with* counsel. "Because representation by counsel and self-representation are mutually exclusive entitlements, the assertion of one right constitutes a *de facto* waiver of the other." *United States v. Traeger*, 289 F.3d 461, 475 (7th Cir. 2002). Therefore, Sanders' claim that his right to self-representation was violated fails.

### III. Ineffective Assistance of Counsel Claims

¶28 Next, we address Sanders' claims that his trial counsel rendered ineffective assistance in the following ways: (1) failing to investigate and call witnesses to support Sanders' alibi defense; (2) failing to present the full video of the photo identification procedures to assist the jury in evaluating witness credibility; and (3) failing to object or request a curative instruction during a police officer's testimony in which he referenced smelling burnt marijuana during a traffic stop.[2]

¶29 In order to prove ineffective assistance, a defendant must show that his trial counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Where a defendant

---

[2] A fourth ineffective assistance claim raised by Sanders—that counsel did not deny Sanders' presence at the crime scene during his closing argument—is actually a right to assert innocence claim that is properly analyzed pursuant to *McCoy v. Louisiana*, and not as an ineffective assistance of counsel claim. *See id.*, 584 U.S. 414, 422, 426 (2018). We will address that claim below.

makes a claim of ineffective assistance, the circuit court is required to hold an evidentiary hearing if the defendant has alleged "sufficient material facts that, if true, would entitle the defendant to relief." *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. The court need not grant an evidentiary hearing if the postconviction motion "does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief." *Id.* In those instances, the circuit court may, in its discretion, deny the motion without a hearing. *Id.*

¶30 To be sufficiently pled, a postconviction motion "must include facts that 'allow the reviewing court to meaningfully assess [the defendant's] claim.'" *Id.*, ¶21 (citation omitted; brackets in *Allen*). This is a question of law that we review *de novo*. *Id.*, ¶9. A sufficient factual basis to support the assertions in the motion will generally include "the five 'w's' and one 'h'; that is, who, what, where, when, why, and how." *Id.*, ¶23.

¶31 Sanders' ineffective assistance claims are not sufficiently pled. Furthermore, Sanders does not address a potential issue with his notice of alibi—raised by one of his earlier attorneys—that the records from the hotel where he claimed to be with Ciarra Edwards did not reflect that he was there at the time of the shooting.

¶32 Sanders' second claim, that counsel should have presented the entire video of the State's witnesses reviewing the photo arrays, is conclusory. *See id.*, ¶9. He does not suggest that there were any irregularities noted in the video; he simply argues that showing the entire video may have assisted the jury in determining those witnesses' credibility and "could have led the jury to find [him] not guilty," providing no factual basis for the claim. *See id.*, ¶21.

¶33 Sanders' third ineffective assistance claim, regarding counsel's failure to object or request a curative instruction during a police officer's testimony, is also inadequate. This claim is based on the testimony of the police officer who conducted a traffic stop of Sanders several months before the shooting, during which Ciarra Edwards, who was in the vehicle with him, called him "Hector." During his testimony, the officer stated that he smelled burnt marijuana coming from the vehicle. Sanders asserts that his counsel performed deficiently in failing to object or request a curative instruction regarding that testimony. However, Sanders does not address the fact that, on cross-examination, his counsel elicited testimony from the officer that no marijuana was found, and no citation was issued to Sanders during that traffic stop. Sanders fails to explain why this alleged deficiency was prejudicial, given the testimony elicited on cross-examination. *See id.*, ¶23; *Strickland*, 466 U.S. at 687.

¶34 Indeed, Sanders fails to demonstrate that he was prejudiced by any of these alleged errors by counsel. To prove prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Showing prejudice means showing that counsel's alleged errors actually had some adverse effect on the defense." *State v. Koller*, 2001 WI App 253, ¶9, 248 Wis. 2d 259, 635 N.W.2d 838. Sanders does not make this showing, as he does not discuss these alleged deficiencies in the context of the other evidence that was presented at trial. Instead, he makes a conclusory statement that the alleged errors amounted to cumulative prejudice. The allegations of his postconviction motion are therefore insufficient to warrant an evidentiary hearing. *See Allen*, 274 Wis. 2d 568, ¶9. As a result, the circuit did not err in denying Sanders' ineffective assistance claims without a hearing. *See id.*

IV.     *McCoy* Claim

¶35     We next address Sanders' claim that his right to assert innocence was violated, pursuant to *McCoy v. Louisiana*, 584 U.S. 414 (2018).  In *McCoy*, the Supreme Court held that a concession of guilt by counsel, over the objection of the defendant, is a violation of the Sixth Amendment right to choose the objective of the defense.  *Id.* at 417.  Whether such a violation occurred is a question of law subject to *de novo* review.  *State v. Chambers*, 2021 WI 13, ¶13, 395 Wis. 2d 770, 955 N.W.2d 144.

¶36     Sanders asserts that his theory of defense was that he was not present at the scene of the shooting.  His claim pursuant to *McCoy* is that during closing arguments, counsel "essentially conceded" his guilt when he suggested that even if Sanders was present during the shooting, he was not directly involved.  This challenged argument involves counsel's reference to testimony from A.L.—after stating that she was sure Sanders was not the shooter, and that she had not seen him with a gun, she said that Sanders had seemed "nervous" and "ashamed," and she "didn't think he really wanted to be involved."

¶37     The full context of the closing argument focused on the credibility of the identification of Sanders by the victim and witnesses.  After suggesting that they may not have been able to reliably identify Sanders, counsel argued that even if their identification of Sanders was to be believed, he did not meet the criteria for party to a crime liability due to his lack of involvement in the shooting.  Based on this record, we conclude that Sanders' counsel did not concede guilt under the *McCoy* standard. *See id.*, 584 U.S. at 417.  Therefore, this claim fails.  *See Chambers*, 395 Wis. 2d 770, ¶13.

*V.      Sentencing Claim*

¶38     Sanders also claims that the circuit court relied on alleged inaccurate information during sentencing.  A defendant has "a constitutionally protected due process right to be sentenced upon accurate information." ***State v. Tiepelman***, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1.  A defendant seeking resentencing based on inaccurate information "must show both that the information was inaccurate and that the court actually relied on the inaccurate information in the sentencing." ***Id.***, ¶26 (citations and some quotations marks omitted).  Both prongs of this test must be proven by clear and convincing evidence. ***State v. Payette***, 2008 WI App 106, ¶46, 313 Wis. 2d 39, 756 N.W.2d 423.  Whether a defendant has been denied this right is a constitutional issue that we review *de novo*. ***Tiepelman***, 291 Wis. 2d 179, ¶9.

¶39     The alleged inaccurate information upon which Sanders bases this claim relates to prior charges and a conviction in Cook County, Illinois, which contributed to the circuit court's comment that he had a "history of robbery." Sanders asserts there was only one charge, as opposed to the two charges referenced during the sentencing hearing, and that there was no conviction.  However, Sanders has provided no documentation to prove that the information from Cook County was inaccurate. *See **Payette***, 313 Wis. 2d 39, ¶46.

¶40     Sanders also complains that the circuit court considered that he was armed during this incident, even though he was acquitted of the charge of being a felon in possession of a firearm.  For purposes of sentencing, however, the circuit court "may consider uncharged and unproven offenses and facts related to offenses for which the defendant has been acquitted." ***State v. Leitner***, 2002 WI 77, ¶45, 253 Wis. 2d 449, 646 N.W.2d 341 (footnote omitted).  Furthermore, the court

acknowledged that Sanders was acquitted of the firearm possession charge, noting that was a mitigating factor for sentencing.

¶41 We therefore conclude that Sanders has not shown that the circuit court relied on inaccurate information during sentencing. As a result, this claim fails. *See Tiepelman*, 291 Wis. 2d 179, ¶26.

## VI. *Newly Discovered Evidence*

¶42 Finally, we address Sanders' request for a new trial based on newly discovered evidence. The alleged newly discovered evidence is a recantation by C.H., submitted as three separate statements: an affidavit and two letters, each dated a few days apart.

¶43 "The rule is that newly discovered recantation evidence must be corroborated by other newly discovered evidence." *State v. McCallum*, 208 Wis. 2d 463, 476, 561 N.W.2d 707 (1997). This is because "[r]ecantations are inherently unreliable," in that "[t]he recanting witness is admitting that he or she has lied under oath. Either the original sworn testimony or the sworn recantation testimony is false." *Id.* "Corroboration requires newly discovered evidence of both: (1) a feasible motive for the initial false statement; and (2) circumstantial guarantees of the trustworthiness of the recantation." *State v. McAlister*, 2018 WI 34, ¶58, 380 Wis. 2d 684, 911 N.W.2d 77.

¶44 As a preliminary matter, three statements from the same person does not constitute corroboration. This is particularly true where, as here, the three statements are inconsistent. For example, C.H.'s notarized affidavit states that he did not "witness [] Sanders commit any crimes," while his other two non-notarized letters state that Sanders was not at the scene of the shooting. In fact, in one of the

statements, C.H. states that he was not even present at the time of the shooting, despite his detailed testimony about the circumstances surrounding the shooting, including that he stayed with J.P. after he was shot until the ambulance arrived.

¶45   Because Sanders has provided no corroborating evidence for C.H.'s statements, they do not meet the criteria for being considered newly discovered evidence. *See id.*, ¶¶31, 33, 58. As a result, this claim fails.

¶46   In sum, as all of the claims presented by Sanders in his postconviction motion fail, the circuit court did not err in denying the motion. *See Allen*, 274 Wis. 2d 568, ¶9. Accordingly, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.