NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter*. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

JERRY L. COFFIN,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-11878
Trial Court No. 2KB-13-379 CR

O P I N I O N

No. 2598 — May 4, 2018

Appeal from the Superior Court, Second Judicial District, Kotzebue, Paul A. Roetman, Judge.

Appearances: Dan S. Bair, Assistant Public Advocate, Appeals and Statewide Defense Section, and Richard Allen, Public Advocate, Anchorage, for the Appellant. Eric A. Ringsmuth, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge. [*]

Judge ALLARD.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Jerry L. Coffin was charged with third-degree sexual assault and first-degree harassment.[1] When the jury retired to deliberate on these charges at Coffin's trial, the trial court excused, but did not discharge, the one remaining alternate juror. The court also instructed the alternate juror that he should not discuss the case with anyone because he could still be recalled to serve on the jury if one of the regularly seated jurors became sick or otherwise unavailable to serve. This procedure violated Alaska Criminal Rule 24(b), which requires the trial court to discharge any remaining alternate jurors once the jury retires to consider its verdict.[2] However, neither party objected to the judge's retention of the alternate juror.

After approximately three and one-half hours on the first day of deliberations, the jury's deliberations were suspended because one of the jurors had to address child care issues. By the time that first juror returned, a different juror required emergency medical care. Deliberations were therefore suspended for the remainder of the day and the jury was sent home with instructions to return the next morning.

Because the second juror's medical issues had not been resolved by the following morning, the trial court summoned the alternate juror to court and confirmed that the alternate juror was still available to deliberate. The trial court subsequently excused the juror who was ill, and replaced that juror with the alternate juror. The trial court also instructed the newly reconstituted jury to "reboot" and "restart their deliberations" because the alternate juror had not been part of its earlier deliberations.

---

[1]   AS 11.41.425(a)(1)(B) & (C) and AS 11.61.118(a)(2), respectively.

[2]   *See* Alaska R. Crim. P. 24(b)(2)(A) ("An alternate juror who does not replace a regular juror *shall* be discharged after the jury retires to consider its verdict.") (emphasis added); Alaska R. Crim. P. 24(b)(2)(B) ("The jurors selected for elimination *shall* be discharged after the jury retires to consider its verdict.") (emphasis added).

Again, neither party objected to this procedure or voiced any concerns with the court's instructions.

After the newly reconstituted jury retired to deliberate, the trial judge commented to both attorneys (outside the presence of the jury) that he was sure that neither of the attorneys "would like to redo [this trial] again, so ... ." The defense attorney responded, "Right." The judge also noted that this was the first time that he had had to use this procedure, and he was glad that it had worked.

Later that day, after approximately five hours of deliberations, the jury returned a guilty verdict on the third-degree sexual assault charge. However, the jury was not able to reach a verdict on the first-degree harassment charge, and that charge was later dismissed by the State.

Coffin now appeals, claiming that the trial court committed plain error when it replaced a regularly seated juror with an alternate juror after deliberations in the case had already begun.

Coffin is correct that the procedures used in this case were improper under Alaska law. We addressed this very issue in *Plate v. State*, a case in which the trial judge substituted an alternate juror for a regularly seated juror who had died after the first day of deliberations.[3] In *Plate*, we held that "Alaska Criminal Rule 24(b)(2) does not authorize a trial judge to substitute an alternate juror for a regular juror once deliberations have begun."[4] We also concluded that the trial court in *Plate* committed reversible error when it authorized such a substitution over the defense attorney's objection.[5]

---

[3]  *Plate v. State*, 925 P.2d 1057, 1059 (Alaska App. 1996).

[4]  *Id.* at 1061.

[5]  *Id.* at 1061-62.

We also made clear in *Plate*, however, that we were not deciding whether all violations of Rule 24(b)(2) would necessarily result in a deprivation of due process or infringement of the defendant's constitutional right to a jury trial.[6] Instead, our decision to reverse Plate's conviction rested on the particular facts of that case, which included the defense attorney's objection to the procedure and the trial court's failure to use proper procedural safeguards.[7]

Thus, *Plate* did not answer the question presented by the present case — whether a violation of Rule 24(b)(2) that is not objected to by the defense attorney (and, arguably, tacitly agreed to by the defense attorney) constitutes plain error requiring reversal of the defendant's conviction.

At the time we decided *Plate*, our analysis was informed by the fact that the federal courts had a criminal rule similar to our Criminal Rule 24(b)(2).[8] We also noted, however, that Colorado had recently amended their criminal rules to allow substitution of an alternate juror after deliberations had started, and we commented that "[p]resumably Colorado believes that this procedure is constitutional."[9]

Three years after we issued *Plate*, the Federal Rules of Criminal Procedure were also amended to allow such mid-deliberation substitutions.[10] Federal Rule of Criminal Procedure 24(c) now provides, in relevant part:

---

[6] *Id.* at 1061-62.

[7] *Id.*

[8] *Id.* at 1060 (citing former Fed. R. Crim. P. 24(c)).

[9] *Id.* at 1061-62 (citing Colo. R. Crim. P. 24(e)).

[10] Fed. R. Crim. P. 24(c), advisory committee's notes to the 1999 amendment.

> The court may retain alternate jurors after the jury retires to deliberate. The court must ensure that a retained alternate does not discuss the case with anyone until that alternate replaces a juror or is discharged. If an alternate replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew.

A growing number of states have likewise amended their criminal rules to allow mid-deliberation substitutions.[11]

Indeed, according to LaFave, a significant number of states now allow mid-deliberation substitutions provided that (1) the alternate juror had not "been relieved of the obligations of a juror or otherwise become tainted [prior to the substitution]," and (2) the reconstituted jury is "carefully instructed to begin its deliberations anew when its composition changed."[12]

Here, the record shows that both of these procedural safeguards were met. The superior court excused, but did not discharge, the alternate juror when the jury retired to deliberate the first time. The superior court also specifically instructed the alternate juror that he was not to discuss the case, and that his service on the jury might still be needed if one of the regular jurors became unavailable to serve. In addition, when the superior court later substituted the alternate juror for the juror who had become ill, the court directly instructed the newly reconstituted jury that they were required to "reboot" and to restart their deliberations anew. The record also indicates that the jury did so — deliberating for a number of hours before it returned its verdict in this case.

---

[11]  *See, e.g.*, Ark. R. Crim. P. 32.3; Conn. Gen. Stat. Ann. § 54-82h (West 2018); N.H. Rev. Stat. Ann. § 500-A:13, V (2018); Ohio Crim. R. 24(G)(1); Pa. R. Crim. P. 645. *See generally* 6 Wayne R. LaFave et al., *Criminal Procedure* § 22.3(e), at 178 & n.300 (4th ed. 2015).

[12]  6 Wayne R. LaFave et al., *Criminal Procedure* § 22.3(e), at 179 (4th ed. 2015).

On appeal, Coffin argues that the trial court should have engaged in the additional inquiries mentioned in *Plate*. That is, the trial court could have conducted a more lengthy inquiry of the alternate juror regarding his compliance with the court's instructions, and the trial court could have asked the other jurors if they believed that they would be able to set aside any opinions that had been formed during the earlier deliberations.[13]

Although it might have been better practice for the trial court to conduct these additional inquiries, we do not agree that the absence of such additional inquiries creates reversible error in this case. We note that the defense attorney was given an opportunity to object to the trial court's instructions and to conduct his own inquiry of the jurors. His failure to request any further action from the trial court indicates that he did not view the instructions as inadequate under the circumstances as they presented themselves at the time.

Nor do we find any reason to believe that the newly reconstituted jury did not follow the instructions that they were given. On appeal, Coffin points out that the jury asked a question about the definition of "harassment" only a short time after the alternate juror joined the jury. From this, he speculates that the jury never actually "rebooted" their deliberations on the third-degree sexual assault charge on which they ultimately convicted Coffin. But the jury continued to deliberate for many hours after they asked their question about the harassment charge, and we see no reason to believe that they confined their deliberations to only one of the two charges. Nor do we agree with Coffin that the reconstituted jury's deliberations were suspiciously brief. This was a relatively simple trial that took less than two days to try and involved only four

_____

[13] *Plate*, 925 P.2d at 1061 (citing *People v. Burnette*, 775 P.2d 583, 590-591 (Colo. 1989)).

prosecution witnesses and no defense witnesses. As a general matter, jurors are presumed to follow the instructions that they are given, and we find no reason to question that presumption here.[14]

In sum, given the procedural safeguards utilized by the judge in this case, the defense attorney's acquiescence in the mid-deliberation substitution, and the widespread acceptance of this practice in other jurisdictions, we conclude that the substitution of the alternate juror for a regular juror after deliberations had already begun — although improper under Alaska law — did not violate Coffin's constitutional rights and did not constitute plain error requiring reversal of Coffin's conviction.[15]

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

[14] *Whiteaker v. State*, 808 P.2d 270, 277 (Alaska App. 1991).

[15] *See Adams v. State*, 261 P.3d 758, 764 (Alaska 2011) (describing plain error as "involv[ing] such egregious conduct as to 'undermine the fundamental fairness of the trial and contribute to a miscarriage of justice.'") (internal citations omitted).