# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-2493

_____

United States of America

*Plaintiff - Appellee*

v.

Alvin Felicianosoto

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: June 13, 2019
Filed: August 15, 2019

_____

Before COLLOTON, KELLY, and ERICKSON, Circuit Judges.

_____

KELLY, Circuit Judge.

A jury found Alvin Felicianosoto guilty of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1). The district

court[1] sentenced him to concurrent 210-month terms of incarceration. On appeal, Felicianosoto argues that his attorney violated his Sixth Amendment rights by conceding guilt as to the possession with intent to distribute count at trial and that the district court committed several sentencing errors. We affirm.

I

The evidence presented at trial revealed the following. In July 2016, Alex Ventura was arrested by Sioux Falls police officers and became a cooperating witness. Ventura agreed to arrange a controlled methamphetamine buy from Felicianosoto on July 20, 2016, and police arrested Felicianosoto en route to the sale. On his person they found a mixture containing 107.4 grams of pure methamphetamine (approximately four ounces). The next day, police executed a search warrant on Felicianosoto's residence and discovered five bags of methamphetamine, packaging, and a scale in the garage.

Victoria Parrow testified that she met Felicianosoto through Ventura in 2015 and had regularly purchased methamphetamine from him. After purchasing smaller amounts for several weeks, she began purchasing half-pound quantities. She estimated that she purchased a half pound every other week for six or seven months, and then sold it to others. She primarily communicated with Felicianosoto via text message. Several of those messages were read aloud at trial, and she explained that they were setting up sales of methamphetamine.

Two other witnesses—Blanca Luna-Soto and Edras Chua-Lemus—testified that they had supplied methamphetamine to Felicianosoto. Luna-Soto testified that, in late 2015 or early 2016, her husband, Chua-Lemus, sold Felicianosoto

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

methamphetamine in exchange for a car title. Chua-Lemus similarly testified that he met Felicianosoto in 2015 and sold him methamphetamine on two occasions (first a half pound and then later one pound).

The police interviewed Felicianosoto on December 20, 2016, and Officer Hector Soto testified about the contents of that interview. Felicianosoto reportedly told officers that the methamphetamine found on his person when he was arrested on July 20 had belonged to Ventura and that Felicianosoto was merely holding it for him. He also claimed that the methamphetamine discovered at his house on July 21 belonged to Ventura. He reportedly told officers that he sometimes distributed methamphetamine to others on Ventura's instructions.

Felicianosoto testified at trial. He stated that he primarily stored Ventura's methamphetamine for him and provided him amounts when he needed it. He admitted to holding Ventura's methamphetamine on July 20, when he was arrested with approximately four ounces of methamphetamine on his person. He testified that he never sold methamphetamine to Parrow, but sometimes accompanied Ventura when Ventura sold to Parrow. Ventura would sometimes tell Parrow that the methamphetamine was Felicianosoto's to ensure that she would pay. Felicianosoto denied ever obtaining methamphetamine from Chua-Lemus or Luna-Soto and denied knowing about the methamphetamine discovered in his garage.

Throughout the trial, Felicianosoto's counsel conceded his client's guilt as to the possession with intent to distribute charge but asked for a verdict of not guilty on the conspiracy charge. In his opening statement, counsel acknowledged that "Alvin did have methamphetamine in his possession, as it is alleged in Count 2, in July of 2016." At closing, he stated, "We know that Alvin got caught with four ounces. He got called and he showed up, and he's never denied that." Later, his counsel said: "Yes, he distributed it, or attempted to, and for that I'm not asking you to acquit him. The government is right. In that Verdict Form there was more than 50 grams in his

-3-

possession with intent to distribute. That is guilty." He went on to attack the evidence supporting the conspiracy charge, as well as the credibility of the government's witnesses.

The jury convicted Felicianosoto on both counts. On the conspiracy count, the jury found that Felicianosoto was responsible for 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. On the possession with intent to distribute count, the jury found that he was responsible for 50 grams or more of actual methamphetamine.

Prior to sentencing, Felicianosoto objected to the recommendation that he receive a two-level enhancement for obstruction of justice under United States Sentencing Guidelines § 3C1.1 (2016) based on his purportedly false material testimony at trial. The district court overruled the objection, finding that Felicianosoto had testified falsely when he denied knowing Chua-Lemus and Luna-Soto, denied placing the drugs in his garage, and denied selling drugs to Parrow. After sustaining Felicianosoto's drug-quantity objection, the district court calculated a total offense level of 34 and a criminal history category of II. This established an advisory Guidelines range of 168 to 210 months' imprisonment, with a mandatory 10-year minimum sentence on each count. After a lengthy allocution, during which Felicianosoto among other things accused his defense attorney of conspiring with the government, the district court imposed concurrent sentences of 210 months' imprisonment on each count.

II

On appeal, Felicianosoto raises four claims. He argues that his trial counsel's concession of guilt amounted to a structural error meriting reversal under McCoy v. Louisiana, 138 S. Ct. 1500 (2018). He also argues that the district court erred in applying the obstruction-of-justice enhancement and in failing to consider the

sentencing factors contained in 18 U.S.C. § 3553 and that his sentence is substantively unreasonable.  We address his McCoy claim before turning to the sentencing issues.

A

The Sixth Amendment entitles the accused "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.  In McCoy, the Supreme Court held that the Sixth Amendment was violated when defense counsel conceded the defendant's guilt during the guilt phase of a capital trial even though the defendant "vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt." 138 S. Ct. at 1505.  In so holding, the Court concluded that "[a]utonomy to decide that the objective of the defense is to assert innocence" belongs in the category of decisions reserved to the defendant alone. Id. at 1508 (identifying other such decisions as whether to plead guilty, whether to waive the right to a jury trial, whether to waive the right to counsel, whether to testify, and whether to appeal).  That autonomy is violated when a lawyer acts contrary to his client's "express[] assert[ion] that the objective of '*his* defence' is to maintain innocence of the charged criminal acts." Id. at 1509 (quoting U.S. Const. amend. VI).  The Court concluded that this error was structural and therefore not subject to ordinary harmless-error analysis. See id. at 1510–11.

The Supreme Court's treatment of the McCoy error contrasts with its treatment of a similar issue in Florida v. Nixon, 543 U.S. 175 (2004).  In Nixon, the Court held that a lawyer's concession of guilt without the defendant's "express consent" does not automatically constitute ineffective assistance of counsel. See 543 U.S. at 178. "[W]hen a defendant, informed by counsel, neither consents nor objects to the course counsel describes as the most promising means to avert a sentence of death, counsel is not automatically barred from pursuing that course." Id.  The defendant in Nixon was repeatedly informed of his attorney's proposed strategy to concede guilt but

-5-

refused to respond to inquiries from his lawyer or the court. See id. at 189. The difference in McCoy was that the defendant opposed his attorney's assertion of guilt "at every opportunity, before and during trial, both in conference with his lawyer and in open court." McCoy, 138 S. Ct. at 1509.

Felicianosoto asserts that McCoy entitles him to a new trial because he expressed his opposition to his attorney's assertion of guilt by pleading not guilty to both counts and taking his case to trial. But Felicianosoto admitted on the stand to holding nearly four ounces of methamphetamine for Ventura, who would later distribute it to others. This was consistent with his attorney's statements to the jury that he was guilty of the possession with intent to distribute count. The record does not reflect that Felicianosoto made any "express statements of [his] will to maintain innocence" in response to his attorney's concessions, either to his counsel or the court. Id. As a result, Felicianosoto has not demonstrated at this juncture that his counsel's concession of guilt violated his autonomy to decide the objective of his defense. We recognize there may be facts not in the present record that might demonstrate such a violation. Felicianosoto remains free to renew his Sixth Amendment claim in a motion under 28 U.S.C. § 2255. See United States v. Hashimi, 768 F. App'x 159, 163 (4th Cir. 2019) (per curiam).

At oral argument, Felicianosoto's counsel urged us to fully resolve his McCoy claim on direct review—if necessary, by remanding to the district court for an evidentiary hearing—because a habeas petition would shift the burden to Felicianosoto to prove prejudice. Felicianosoto cites no authority supporting his remand proposal, and has directed us only to Yannai v. United States, 346 F. Supp. 3d 336 (E.D.N.Y. 2018), in support of his contention that he would bear the burden to prove prejudice on a § 2255 motion. But Yannai does not support Felicianosoto's argument. Yannai's counsel did not concede his guilt to the jury, so the only question was whether his counsel was ineffective under Strickland v. Washington, 466 U.S.

-6-

668 (1984).  See id. at 342–44.  Yannai does not establish that a defendant who *proves* a McCoy error in a habeas petition must prove prejudice, and we question whether that would be the case.  See McCoy, 138 S. Ct. at 1510–11 (holding that the error is about "a client's autonomy, not counsel's competence," and therefore Strickland's prejudice requirement does not apply).  We decline to remand.

B

Turning to Felicanosoto's sentencing arguments, we find no basis for reversal.

We review the applicability of the obstruction-of-justice enhancement in USSG § 3C1.1 de novo and the district court's factual findings for clear error.  United States v. Beattie, 919 F.3d 1110, 1115–16 (8th Cir. 2019).  Committing perjury is a well-established method of triggering the enhancement, see USSG § 3C1.1 cmt. (n.4(B)), and we give great deference to the district court's factual findings on the issue, United States v. King, 854 F.3d 433, 445–46 (8th Cir. 2017).  To show that the defendant committed perjury, the government must show by a preponderance of the evidence that the defendant "willfully testified falsely as to a material matter."  Id. at 446 (quoting United States v. Reid, 827 F.3d 797, 801 (8th Cir. 2016)).

The district court identified three material matters about which Felicianosoto testified falsely: that he never purchased drugs from Chua-Lemus and Luna-Soto, that he had not placed drugs in his garage, and that he never sold drugs to Parrow. Felicianosoto does not contest that his testimony on these subjects was both false and material; he argues only that the district court failed to specifically find that his testimony was *willfully* false.  But Felicianosoto provides no argument as to how his statements—which directly conflicted with other evidence introduced at trial—could have been "simply due to the defendant's confusion, mistake, or faulty memory."  Id. (cleaned up).  Accordingly, we find no error in the court's application of the enhancement here.

-7-

Felicianosoto argues that the district court committed procedural error by failing to consider the sentencing factors in 18 U.S.C. § 3553(a). As he did not object at sentencing, he must demonstrate plain error. United States v. Merrell, 842 F.3d 577, 584 (8th Cir. 2016). To succeed, Felicianosoto must show (1) an error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. United States v. Pirani, 406 F.3d 543, 550 (8th Cir. 2005) (en banc).

Felicianosoto has not demonstrated that the district court committed plain error. "'We do not require district courts to mechanically recite the § 3553(a) factors' when it is clear the factors were properly considered." United States v. Brown, 627 F.3d 1068, 1073 (8th Cir. 2010) (quoting United States v. Lazarski, 560 F.3d 731, 733 (8th Cir. 2009)). Here, the district court identified several factors that led it to apply a sentence at the top of the Guidelines range, including Felicianosoto's perjurious statements and his refusal to accept responsibility for his offenses. These are permissible factors for the court to consider when imposing a sentence. See 18 U.S.C. § 3553(a)(1), (a)(2)(A), (a)(4).

Finally, Felicianosoto argues that his sentence is substantively unreasonable, an issue we review for an abuse of discretion. Merrell, 842 F.3d at 584. "A sentencing court abuses its discretion if it fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." United States v. Williams, 913 F.3d 1115, 1116 (8th Cir. 2019) (per curiam) (quoting United States v. Johnson, 812 F.3d 714, 715 (8th Cir. 2016) (per curiam)). A within-Guidelines sentence is afforded a presumption of reasonableness. Id.

Felicianosoto argues that the district court abused its discretion by placing undue weight on his statements at the sentencing hearing, during which he reasserted some of the falsehoods made during his trial testimony and accused his attorney of conspiring with the government. Felicianosoto provides no support for the proposition that these statements were improper or irrelevant factors to consider at sentencing. Accordingly, Felicianosoto has not rebutted the presumption that his within-Guidelines sentence was reasonable.

### III

For the reasons discussed above, we affirm Felicianosoto's convictions and sentence.

_____