NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>*. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

JAMES R. PHILLIPS,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-13800
Trial Court No. 2KB-12-00197 CI

**O P I N I O N**

No. 2806 — May 9, 2025

Appeal from the Superior Court, Second Judicial District, Kotzebue, Paul A. Roetman, Judge.

Appearances: Andrew Stebbins (opening brief) and Isabella Blizard (reply brief), Assistant Public Advocates, and James Stinson, Public Advocate, Anchorage, for the Appellant. Ann B. Black, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Wollenberg, Harbison, and Terrell, Judges.

Judge HARBISON.

James R. Phillips was convicted, following a jury trial, of four counts of second-degree sexual assault, one count of attempted second-degree sexual abuse of a

minor, and six counts of furnishing alcohol to a minor.[1] These offenses arose out of four separate incidents involving four teenage girls: nineteen-year-old B.K., eighteen-year-old S.W., fifteen-year-old J.B., and fourteen-year-old N.B.[2]

After the court entered its final judgment, Phillips filed both a direct appeal and an application for post-conviction relief. This Court affirmed Phillips's convictions on direct appeal,[3] and the superior court then adjudicated the various claims of ineffective assistance of counsel alleged in Phillips's application for post-conviction relief. Following an evidentiary hearing, the court entered an order denying relief.

Phillips now challenges the denial of his application for post-conviction relief, renewing three of his claims. First, Phillips argues that his attorney violated his right to autonomy when the attorney conceded Phillips's guilt as to one of the counts of second-degree sexual assault without first consulting with Phillips, and that this was a structural error requiring reversal regardless of prejudice. The superior court found that Phillips's attorney had indeed conceded Phillips's guilt without consulting with Phillips, but it concluded that this was not a structural error. For the reasons explained in this opinion, we conclude that the attorney's concession was a structural error, and

---

[1] Former AS 11.41.420(a)(1) and (a)(3) (2008-2009), AS 11.41.436(a)(1) & AS 11.31.100(a), and former AS 04.16.051(d)(3) (2008-2009), respectively. The jury also found Phillips guilty of two counts of third-degree sexual abuse of a minor, but these counts merged with other conduct for which Phillips was convicted. *See* AS 11.41.438(a)(1). Prior to trial, Phillips pleaded no contest to one count of failure to register as a sex offender. *See* AS 11.56.840(a)(1).

[2] The charges were originally brought in three separate cases, but the trial court granted the State's motion to join the cases for trial and conducted a single jury trial (and a single sentencing hearing) for all three cases.

[3] *Phillips v. State*, 2015 WL 4599590 (Alaska App. July 29, 2015) (unpublished).

we therefore reverse Phillips's conviction on that count.[4] However, we conclude that the attorney's concession did not impact the remaining counts.

Phillips also contends that his attorney was ineffective in responding to Phillips's violation of a protective order that was issued by the trial court and in preparing Phillips to testify about the allegation involving B.K. He argues that the attorney's incompetence on these points prejudiced his convictions. For the reasons explained in this opinion, we affirm the superior court's denial of these claims.

*Background facts and proceedings*

On February 28, 2009, Kotzebue police responded to a report that Phillips had just sexually abused a fourteen-year-old girl and that another teenage girl was currently with Phillips, passed out at his house. During the course of the ensuing investigation, witnesses reported that over an eight-month period, Phillips provided alcohol to teenage girls and then either had sex (or tried to have sex) with them after they became intoxicated. Phillips was charged with fifteen crimes in three different criminal cases stemming from four separate incidents. Seven of these counts charged sexual assault, sexual abuse of a minor, or attempted sexual abuse of a minor. The remaining counts charged furnishing alcohol to a minor. The cases were joined for trial.

Phillips had two prior convictions for out-of-state offenses that would be sexual felonies under Alaska law. As a result, he faced presumptive 99-year sentences for the charges of second-degree sexual assault and attempted second-degree sexual abuse of a minor.[5] And under Alaska Evidence Rule 404(b)(3), evidence of Phillips's two prior sexual felonies likely would be admissible against him if he relied on a defense of consent in response to the sexual assault charges.

---

[4]  Count IV of 2KB-09-00501 CR.

[5]  *See* AS 12.55.125(i)(3)(E) & AS 12.55.145(a)(4) and AS 12.55.125(i)(4)(G) & AS 12.55.145(a)(4), respectively.

To keep the State from presenting evidence about these prior offenses during Phillips's trial, Phillips's attorney informed the trial court that Phillips would not rely on a consent defense. Based on this declaration, the trial court issued a protective order barring Phillips from raising a consent defense at trial and ruling that Evidence Rule 404(b)(3) did not apply in this case. The State accordingly did not attempt to introduce evidence of Phillips's prior sexual felony convictions.

During the trial, the prosecution presented evidence about four incidents that gave rise to the charges against Phillips. The State alleged that, during these incidents, Phillips provided alcohol to teenage girls and then engaged in sexual contact or sexual penetration with them.

Several witnesses testified that, during one of these incidents, Phillips sexually penetrated nineteen-year-old B.K. while she was passed out on a couch in Phillips's house. B.K. testified that she had passed out from drinking alcohol Phillips had given to her and other teenagers. She also testified that she had not consented to any kind of sexual activity with Phillips. Two other people testified that they saw Phillips having sex with B.K. while she was unconscious. This conduct formed the basis for one count of second-degree sexual assault and one count of furnishing alcohol to a minor.

With regard to a second incident, S.W. and two other witnesses testified that Phillips sexually assaulted S.W. in a broken-down vehicle. According to these witnesses, S.W., Phillips, and two other teenagers were sitting in the vehicle drinking. When the two teenagers left the vehicle, Phillips climbed over to S.W., got on top of her, and started touching her breasts, thighs, and genital area. One of the teenagers heard S.W. screaming, came back to the car, and pulled Phillips off S.W. This conduct formed the basis for two additional counts of second-degree sexual assault and one count of furnishing alcohol to a minor.

J.B. testified about a third incident, which occurred when she was fifteen years old. She stated that she met Phillips through her friends, H.B. and N.B., and that

they sometimes drank alcohol supplied by Phillips at his house. J.B. testified that one time she drank so much that she passed out on Phillips's bed, and when she woke up, Phillips was touching her breasts. This conduct formed the basis for one count of second-degree sexual assault, one count of third-degree sexual abuse of a minor, and one count of furnishing alcohol to a minor.[6]

N.B. testified about a fourth incident, telling the jury that when she was fourteen years old, she fell asleep while she and other teenagers were drinking at Phillips's residence. She woke up to Phillips kissing her stomach and touching her breasts. This conduct formed the basis of one count of third-degree sexual abuse of a minor, one count of attempted second-degree sexual abuse of a minor, and two counts of furnishing alcohol to a minor.[7]

Phillips testified in his own defense. During direct examination, Phillips first testified about the incidents involving S.W., J.B., and B.K. Phillips denied having sexually assaulted S.W. in the broken-down vehicle. He also denied J.B.'s claim that he had touched her breasts. He stated that his puppy had been jumping around and licking J.B., and he implied that J.B. was confused about what really happened. With regard to the incident involving B.K., Phillips acknowledged engaging in sexual intercourse with B.K. However, he claimed that B.K. was lucid and coherent at the time, and that she was the one who initiated the encounter by kissing him and then asking him to have sex with her.

After Phillips gave this testimony, the prosecutor asked for a bench conference. The prosecutor asserted that Phillips's testimony with respect to the incident involving B.K. violated the court's protective order because it amounted to a

---

[6] After the jury found Phillips guilty of the sexual offenses against J.B., the trial court merged them into a single conviction.

[7] As with the counts involving J.B., after the jury found Phillips guilty of the sexual offenses involving N.B., the trial court merged them into a single conviction.

defense of consent. After giving the defense attorney repeated opportunities to respond to the prosecutor's objection, the trial court determined that Phillips's testimony violated the protective order. After this, the court struck — and instructed the jurors to ignore — the portion of Phillips's testimony where he asserted that B.K. had made a sexual advance toward him, and that she had willingly had sex with him. However, the court did not strike Phillips's admission that he had sex with B.K., and that remained part of the record.

Phillips then continued testifying, describing the final alleged encounter involving N.B. He claimed that N.B. lied about being sexually abused to retaliate against him because he had not given her more alcohol when she requested it.

During closing argument, the defense attorney conceded Phillips's guilt on two of the counts, telling the jury they should select "guilty" on the forms for those counts. Specifically, the defense attorney conceded that Phillips was guilty of furnishing alcohol to S.W. and also that Phillips was guilty of second-degree sexual assault of B.K.

However, as to the other counts, the defense attorney encouraged the jury to believe Phillips's description of what actually happened. The attorney highlighted the amount of time that passed between when the alleged incidents occurred and when they were eventually reported, and he suggested that the girls' memories might not be very clear, especially because they were not sober at the time of the alleged offenses. The defense attorney argued that the delayed reporting made it nearly impossible for Phillips to fairly defend himself.

The defense attorney also suggested to the jury that N.B. had a motive to lie about Phillips allegedly sexually assaulting her because she was drunk, had been kicked out of Phillips's house, and did not want to get in trouble when she got home. The attorney argued that although Phillips was "a fool" for operating a party house for a bunch of teenage girls, Phillips had admitted during his testimony to those things he did. The attorney ended by telling the jury that the case was about whether young people are reliable, and whether or not the young people in this case had lied in order to avoid

trouble for themselves. He encouraged the jurors to weigh the evidence carefully, and told them that "there's some reasonable doubts about some of these offenses."

The jury found Phillips guilty on all counts except Count III, furnishing alcohol to B.K. At sentencing, the parties acknowledged that Phillips faced a presumptive 99-year sentence for each of the four second-degree sexual assault convictions and for the one attempted second-degree sexual abuse of a minor conviction. Phillips proposed no mitigating factors that would apply to his conduct. The court sentenced Phillips to a composite term of 116 years to serve, with no suspended time.

Phillips filed a direct appeal and an application for post-conviction relief. In the direct appeal, he challenged the joinder of his cases for trial. He also challenged the trial court's ruling that his testimony about the incident involving B.K. had violated the protective order and the attendant order striking portions of Phillips's testimony from the record. This Court rejected these challenges and affirmed Phillips's convictions.[8]

The superior court then adjudicated Phillips's application for post-conviction relief. After considering Phillips's application, including his affidavit and the affidavit of his trial attorney, the superior court determined that there were contested issues of material fact requiring an evidentiary hearing. Phillips's trial attorney testified at the evidentiary hearing. In his testimony, the trial attorney often could not remember details about his representation of Phillips. However, the attorney had previously filed an affidavit that was quite detailed, and testified that he had a better memory of representing Phillips at the time he prepared the affidavit.

Phillips did not testify at the evidentiary hearing, and the superior court ultimately denied his application for post-conviction relief. The court grouped Phillips's arguments into four broad claims: that the trial attorney was ineffective for (1) failing

---

[8] *Phillips v. State*, 2015 WL 4599590 (Alaska App. July 29, 2015) (unpublished).

to prepare Phillips to testify, (2) foreclosing the consent defense without consulting Phillips, (3) not arguing for a mistrial after Phillips violated the protective order, and (4) conceding guilt concerning the sexual assault of B.K. during closing argument.

The superior court found that the trial attorney had acted competently in his handling of Phillips's first three claims. But the court made the opposite finding with regard to the attorney's concession that Phillips committed the second-degree sexual assault of B.K. The court found that, given that Phillips would receive essentially a life sentence if convicted of this count, there was no strategic benefit to this concession, and the trial attorney acted incompetently in making this concession. But the court found that the attorney's deficient representation did not prejudice Phillips, and it accordingly denied Phillips's application.

This appeal followed.

*Why we conclude that Phillips is entitled to reversal of his conviction for second-degree sexual assault of B.K.*

On appeal, Phillips first argues that he was denied his right to choose the objective of his own defense under *McCoy v. Louisiana* when his attorney admitted his guilt to the second-degree sexual assault charge involving B.K. without first consulting with him.[9] Phillips further argues that this error was structural — *i.e.*, that it requires reversal regardless of prejudice. After careful consideration, we agree with Phillips and reverse his conviction for second-degree sexual assault involving B.K.

Our analysis is dictated primarily by four cases issued by the United States Supreme Court over the last forty years. The first two cases are *Strickland v. Washington* and *United States v. Cronic*, issued on the same day in 1984.[10] In

---

[9] *McCoy v. Louisiana*, 584 U.S. 414 (2018).

[10] *Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Cronic*, 466 U.S. 648 (1984).

*Strickland*, the United States Supreme Court set out the basic two-prong test for an ineffective assistance of counsel claim, which requires the defendant to prove both that their attorney was incompetent and that this incompetence caused them prejudice.[11] In *Cronic*, the Court held that there were certain rare circumstances in which the defendant is not required to show prejudice.[12] These circumstances include "the complete denial of counsel" and situations in which "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing."[13] Together, *Strickland* and *Cronic* provide the basic framework for analyzing ineffective assistance of counsel claims under the federal constitution.[14]

The other two cases are *Florida v. Nixon* and *McCoy v. Louisiana*.[15] Both *Nixon* and *McCoy* were capital cases where the attorneys believed the best strategy was to concede the defendants' guilt on the underlying criminal charges in the hopes of convincing the jury to reject the death penalty.

In *Nixon*, the attorney repeatedly tried to discuss this planned strategy with his client, but the client was unresponsive, refusing to either agree or object to the strategy.[16] The attorney went forward with the concession strategy, which he believed was best for his client under the circumstances.[17] On appeal, the Supreme Court considered whether Nixon's claim of ineffective assistance of counsel should be

---

[11]   *Strickland*, 466 U.S. at 687.

[12]   *Cronic*, 466 U.S. at 658-62.

[13]   *Id.* at 659.

[14]   Alaska follows a somewhat different version of the *Strickland* test. *See Risher v. State*, 523 P.2d 421 (Alaska 1974). But those differences are not relevant to this case.

[15]   *Florida v. Nixon*, 543 U.S. 175 (2004); *McCoy v. Louisiana*, 584 U.S. 414 (2018).

[16]   *Nixon*, 543 U.S. at 181-82.

[17]   *Id.*

reviewed under *Strickland*, which would require a showing of prejudice, or *Cronic*, which would not.[18] Nixon analogized his attorney's concession to a guilty plea, which requires the express consent of the defendant, and argued that his attorney's concession should therefore be reviewed under *Cronic*, not *Strickland*.[19]

The Supreme Court rejected this argument. The Court agreed that an attorney is required to consult with his client before conceding guilt, writing that "[defense counsel] was obliged to, and in fact several times did, explain his proposed trial strategy to Nixon."[20] But the Court held that a defendant is not required to explicitly approve this strategy. Rather, when an attorney explains the strategy to the client, and the client is unresponsive, a defendant is only entitled to reversal of his conviction if he received ineffective assistance of counsel under *Strickland* — *i.e.*, if he can show that his attorney's decision was both incompetent and caused him prejudice.[21]

In *McCoy*, the defendant's attorney similarly believed that the best chance of avoiding the death penalty was to concede guilt in the hopes of convincing the jury to reject the death penalty.[22] And like in *Nixon*, the attorney discussed the strategy with the defendant.[23] But unlike in *Nixon*, McCoy repeatedly and vociferously objected to this strategy, both in private and on the record.[24]

---

[18] *Id.* at 186-87.

[19] *See id.* at 185-89.

[20] *Id.* at 187, 189.

[21] *Id.* at 192.

[22] *McCoy v. Louisiana*, 584 U.S. 414, 418 (2018).

[23] *Id.* at 418-19.

[24] *Id.* at 418-20.

The Court first held that an attorney cannot concede guilt over his client's objection.[25] As *McCoy* explained, "[t]rial management is the lawyer's province," but "[s]ome decisions . . . are reserved for the client — notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal."[26] To this category of decisions entrusted to the client, *McCoy* added the "[a]utonomy to decide that the objective of the defense is to assert innocence":

> Just as a defendant may steadfastly refuse to plead guilty in the face of overwhelming evidence against her, or reject the assistance of legal counsel despite the defendant's own inexperience and lack of professional qualifications, so may she insist on maintaining her innocence at the guilt phase of a capital trial. These are not strategic choices about how best to *achieve* a client's objectives; they are choices about what the client's objectives in fact *are*.[27]

Of equal importance, *McCoy* further held that this sort of violation of a client's autonomy is a structural error requiring reversal regardless of prejudice.[28] The Court, however, did not rely on *Cronic* to reach this conclusion. As the Court explained, "[b]ecause a client's autonomy, not counsel's competence, is in issue, we do not apply our ineffective-assistance-of-counsel jurisprudence[.]"[29]

Instead, the Court held that counsel's admission of guilt over the client's express objection was always "structural error" because it "blocks the defendant's right to make the fundamental choices about his own defense" and because "the effects of

---

[25]  *Id.* at 422-23.

[26]  *Id.* at 422.

[27]  *Id.* (emphasis in original).

[28]  *Id.* at 426-28.

[29]  *Id.* at 426.

the admission would be immeasurable, because a jury would almost certainly be swayed by a lawyer's concession of his client's guilt."[30]

On appeal, Phillips argues that he is entitled to reversal under *McCoy*. We agree. Admittedly, Phillips's case is not identical to *McCoy*. McCoy repeatedly and vociferously objected to his attorney's plan to concede his guilt. Indeed, McCoy's objections were so clear that *McCoy* was decided on direct appeal, without the need for further development of the record through a post-conviction relief proceeding.[31]

Here, by contrast, Phillips did not object on the record, nor is there any indication that Phillips objected in private. But there was a good reason for this: as the superior court found by clear and convincing evidence, Phillips's attorney never consulted with Phillips about his plan to concede guilt as to Count IV. It appears, in other words, that Phillips first learned of his attorney's decision to admit Phillips's guilt during closing argument, at the same time as the jury.

The Fourth Circuit recently addressed this issue in *United States v. Hashimi*.[32] Hashimi alleged that his attorney had generally failed to consult with him throughout the trial, and that his attorney had conceded his guilt on two of four charges without Hashimi's consent.[33] The district court concluded that Hashimi was not entitled to relief unless there was evidence, like there was in *McCoy*, that he "expressly told his lawyer *not* to concede his guilt during closing statements."[34]

---

[30]  *Id.* at 427-28.

[31]  *Id.* at 420.

[32]  *United States v. Hashimi*, 110 F.4th 621 (4th Cir. 2024).

[33]  *Id.* at 625-26. Hashimi was charged with two drug-related counts in connection with running a drug-distribution conspiracy and also charged with assaulting and kidnapping his ex-girlfriend. *Id.* at 624. At trial, his attorney conceded Hashimi's guilt with respect to the assault and kidnapping charges. *Id.* at 624-25.

[34]  *Id.* at 629.

The Fourth Circuit reversed, holding that *McCoy* does not require defendants to object to their attorney's concession of guilt if the attorney never consulted with the client to begin with:

> *McCoy* does not impose on criminal defendants who have chosen to go to trial a prophylactic (and mostly redundant) obligation to notify their lawyers that their plan for trial is not to concede guilt to the jury. Instead, and as the government concedes, *McCoy* puts the obligation on the lawyer, requiring that before counsel may make a concession of guilt to the jury, he must discuss his plan with the defendant. Put differently, *McCoy* is not satisfied if a defendant fails to object because he was never given the *opportunity* to object. Were it otherwise, this loophole would swallow the *McCoy* rule, transferring the concession decision from client to lawyer so long as the lawyer never asks the client's permission.[35]

We agree with this reasoning. If it is structural error for an attorney to concede guilt over the defendant's objection, it must also be structural error to deny the defendant a reasonable opportunity to make that objection. Any other approach would undermine the central premise of *McCoy*: that "[a]utonomy to decide that the objective of the defense is to assert innocence" is "reserved for the client."[36]

The State's contrary arguments are not persuasive. First, the State argues that *McCoy* is limited to situations in which the defendant expressly objected. Although this is an accurate description of the facts and holding of *McCoy* itself, we conclude,

---

[35]  *Id.* at 630 (alteration in original) (citations omitted).

[36]  *McCoy*, 584 U.S. at 422. We note that at least two states treated a defense attorney's failure to consult with the defendant regarding a planned concession as to guilt as structural error long before *McCoy* was decided. *See State v. Wiplinger*, 343 N.W.2d 858, 860-61 (Minn. 1984); *State v. Harbison*, 337 S.E.2d 504, 507-08 (N.C. 1985). For more recent examples, *see also Onyelobi v. State*, 932 N.W.2d 272, 282 (Minn. 2019) and *State v. Parker*, 893 S.E.2d 544, 547-48 (N.C. App. 2023).

for the reasons already explained, that *McCoy* must be extended to situations in which the defendant had no opportunity to object.

Next, the State argues that the attorney's concession was consistent with Phillips's and his attorney's "agreed-upon strategy" to "admit 'damning facts' to 'prevail on *other* sex offense counts.'"

A defendant, however, may concede "damning facts" (*e.g.*, that he had sex with an incapacitated person), while nonetheless maintaining that he is not guilty of the charged offense (*e.g.*, by challenging the *mens rea* as to the person's incapacitation). The superior court itself acknowledged this distinction, explaining that "[t]hough [Phillips's attorney] did consult with Phillips about making concessions generally, *i.e.*, that he may have to 'admit even damning' facts, [the attorney] did not consult with Phillips about conceding his guilt to Count IV."[37]

---

[37] The superior court instead rejected Phillips's *McCoy* argument on legal grounds, concluding that "circuit courts that have evaluated the issue have held" that "defense counsel's failure to consult with his client about conceding guilt on a specific count [does not] rise[] to the level of structural error." As Phillips explains at length in his briefing, however, none of the cases cited by the superior court provide strong support of this contention, and on appeal, the State did not rely on any of the cases cited by the superior court.

The superior court first cited to the Third Circuit's decision in *United States v. Wilson*, but *Wilson* involved an attorney's concession of a technical jurisdictional element (namely, whether the bank Wilson robbed was federally insured). *United States v. Wilson*, 960 F.3d 136, 144 (3d Cir. 2020). *Wilson* explicitly distinguished *McCoy* on the grounds that *McCoy* was about a concession of factual guilt. *Id.* Here, we face an issue of factual guilt, like in *McCoy*, not a concession to a jurisdictional element, like in *Wilson*.

The superior court next cited to a single-judge, unpublished order from the Sixth Circuit denying a *pro se* litigant a certificate of appealability in *Simmons v. Huss*. *Simmons v. Huss*, 2020 WL 3032923 (6th Cir. May 4, 2020) (unpublished). *Simmons* is of little persuasive value: the order never mentioned *McCoy*, and Simmons never requested an evidentiary hearing and therefore never proved that his attorney actually did fail to consult with him (unlike Phillips). *Id.* at *2.

Next, the superior court cited to the Eighth Circuit's decision in *United States v. Felicianosoto*, but Felicianosoto effectively conceded his own guilt to the charged count (possession with intent to distribute) when he admitted on the stand to holding nearly four

Next, the State contends that the superior court's finding regarding the lack of consultation was clearly erroneous because the judge "mistakenly relied on Phillips' affidavit to establish [it]."[38] As support for this argument, the State cites to two unpublished memorandum decisions from this Court, *Harmon v. State* and *Lockuk v. State*.[39] According to the State, these cases establish that "the [superior] court was not permitted to rely upon Phillips' own self-serving affidavit because those statements were inadmissible on the merits following the evidentiary hearing."

_____

ounces of methamphetamine for another person, who would later distribute it to others. *United States v. Felicianosoto*, 934 F.3d 783, 787 (8th Cir. 2019). As the Eighth Circuit explained, this meant that Felicianosoto had not demonstrated that his counsel's concession of guilt violated his autonomy to decide the objective of his defense. *Id.* By contrast, it is clear from Phillips's testimony on the stand that he wanted to maintain his innocence to the count at issue.

Finally, the superior court cited to three additional cases that are all distinguishable because, among other reasons, they were decided before *McCoy* was issued. As we have already explained above, it is the logic of *McCoy* that demands the result we have reached in this case, and cases that do not address *McCoy* are of little persuasive value to our decision.

We note, however, that, although the cases discussed here do not contradict the result we reach today, they do illustrate the potential limitations on the applicability of structural error in this context.

[38] Phillips stated in his affidavit that his trial attorney never informed him of his plan to concede guilt. By contrast, Phillips's trial attorney did not specifically state in his affidavit whether he had consulted with Phillips about the decision to concede, although he did otherwise describe his interactions with Phillips and their discussions about trial strategy in some detail. Nothing in the attorney's affidavit or testimony suggested that the trial attorney had consulted with Phillips about his concession of Phillips's guilt on the count involving B.K. In fact, in his affidavit, the trial attorney stated only that his closing argument "speaks for itself." And at the evidentiary hearing, the attorney testified that he did not independently recall anything about the closing argument or telling the jury to mark "guilty"; he did not elaborate on why he chose to concede the count or whether he had spoken to Phillips about it.

[39] *Harmon v. State*, 2023 WL 29320 (Alaska App. Jan. 4, 2023) (unpublished); *Lockuk v. State*, 2011 WL 5027060 (Alaska App. Oct. 19, 2011) (unpublished).

However, the State ignores important clarifying language in the two cases on which it relies. Neither *Harmon* nor *Lockuk* hold that it is *always* improper for a trial court to rely on an affidavit following an evidentiary hearing. Rather, as we explained in *Lockuk*, and again in *Harmon*, a defendant is not entitled to rely on an affidavit following an evidentiary hearing "*absent* a stipulation between the parties, or *absent* some other provision of law relaxing the preference for live testimony."[40]

Here, there was a stipulation between the parties that Phillips's affidavit was part of the record properly before the court. At a status hearing approximately one month before the evidentiary hearing, the court informed the parties that "exhibit lists will be due a week before [the hearing]," and that the "parties should exchange those and also have discussed those so we can get to the merits and not get stuck on procedure." Consistent with the court's request, Phillips subsequently filed a trial brief and a series of attached exhibits, including Phillips's own affidavit, as well as a "Notice on Exhibits" explaining that the parties agreed that the exhibits attached to Phillips's trial brief "should be part of the record." We were unable to find any indication in the record that Phillips's notice misrepresented the State's position, or that the State objected to this procedure.

Furthermore, Phillips's post-conviction relief attorney twice referenced Phillips's affidavit in his written closing argument and referred generally to the trial

---

[40] *Harmon*, 2023 WL 29320, at *14 n.19 (emphasis added) (quoting *Lockuk*, 2011 WL 5027060, at *5). We note that Alaska Criminal Rule 35.1(g) appears to be a "provision of law relaxing the preference for live testimony." *Id.* (quoting *Lockuk*, 2011 WL 5027060, at *5). That rule provides that at an evidentiary hearing on an application for post-conviction relief, the superior court "may receive proof by *affidavits*, depositions, oral testimony, or other evidence." Alaska R. Crim. P. 35.1(g) (emphasis added). It is unclear why this provision was not mentioned in either *Harmon* or *Lockuk*, and we need not decide whether and to what extent it would permit a court to rely on an affidavit over objection from the opposing party. For present purposes, it is enough to say that Criminal Rule 35.1(g) makes clear that a court is *permitted* to rely on affidavits when both parties agree to their admission.

brief exhibits as "contain[ing] the relevant parts of the record, reports and affidavits for the court's consideration." The State filed its response a week later, and, again, the State did not object to Phillips's reliance on the trial brief exhibits, including Phillips's own affidavit.[41] The court's order acknowledged this procedural history in its written order, explaining that "Phillips also asked the Court to rely on his own affidavit" and then proceeding to describe the contents of that affidavit in detail.

Given this procedural history, it is apparent the parties agreed that Phillips's affidavit was part of the record before the court and could be relied on by the court in making findings of fact and issuing its ruling. And given the court's affirmative factual finding that Phillips's attorney did not consult with Phillips before conceding guilt as to the second-degree sexual assault of B.K., we conclude that Phillips is entitled to reversal of that conviction.

But we also conclude that the trial attorney's concession that Phillips sexually assaulted B.K. does not require reversal of the remaining counts, which involved sexual offenses against S.W., N.B., and J.B.[42] During closing argument, the defense attorney actively argued against a finding of guilt on those counts. And we see no reason to infer that an attorney's concession on one count would impact the jury's deliberations on the other counts, particularly when, as here, these counts were clearly contested and involved separate incidents.

---

[41] In fact, the State largely ignored the consultation issue, instead arguing that Phillips's attorney "did not concede a count to the jury" in the first place. According to the State, Phillips's attorney was "not being literal" when he told the jury to "insert guilty" on the verdict form. The superior court understandably found this argument "unpersuasive."

[42] *E.g.*, *United States v. Wiles*, 102 F.3d 1043, 1060 (10th Cir. 1996) (explaining that structural error, which requires a reversal of conviction without a showing of prejudice, is not limited to situations where the constitutional error affects the entire conduct of trial from beginning to end and may apply to only a single count).

We wish to note that today's holding is a limited one. For this type of error to be treated as structural, it is not enough for a defendant seeking post-conviction relief on this basis to show they did not affirmatively consent to the concession strategy; rather, the applicant must show, by clear and convincing evidence, either that they specifically objected to the strategy (as in *McCoy*), or that the defense attorney entirely failed to consult with the defendant about the strategy (as in both *Hashimi* and the present matter). Furthermore, although we leave it to future cases to determine what, precisely, it means for a defense attorney to "fail to consult" with the defendant, we do not think the required consultation must take any specific form. Rather, what matters is whether the defendant was aware of the attorney's strategy and had a sufficient opportunity to express disagreement with the strategy.[43]

With these clarifications, we reverse the denial of Phillips's post-conviction relief application as to his conviction for second-degree sexual assault involving B.K. and vacate this conviction.

*Why we conclude that Phillips did not establish that his attorney provided ineffective assistance of counsel in response to his violation of the protective order*

Phillips's next argument is that his trial attorney provided ineffective assistance of counsel by (1) failing to move for a mistrial after Phillips violated the court's protective order and (2) acquiescing in the court's curative instruction, which required the jury to disregard portions of his testimony. Phillips claims that this decision was unreasonable and would have caused the jury to disbelieve the remainder of his

---

[43] We also note that Phillips makes this argument as part of a timely application for post-conviction relief. We express no opinion on whether this claim of error could be raised in an untimely application, or whether, assuming it could be raised, it would be treated as structural.

testimony, impacting its decision to return guilty verdicts on not only the sexual assault of B.K., but also the other counts.

As we have explained, in order to keep the jury from hearing evidence of Phillips's other sexual offenses, the defense attorney told the trial court that Phillips would not offer the defense of consent in response to the charges against him. Relying on this assertion, the trial court issued a protective order that Phillips could not offer such a defense, and the State refrained from presenting evidence of Phillips's prior sexual offenses during its case-in-chief.[44] But when Phillips testified, he stated that B.K. had consented to having sex with him.[45]

The prosecutor objected, arguing that the court should strike Phillips's testimony and instruct the jury to disregard it. By contrast, Phillips's trial attorney asked the court to instruct the jury that consent was not a defense. However, when the court found this to be inadequate, the defense attorney agreed to the prosecutor's proposal. The trial court then struck — and instructed the jurors to ignore — the portion of Phillips's testimony where he asserted that B.K. had made a sexual advance toward him, and that she willingly had sex with him. The court did not strike Phillips's admission that he had sex with B.K., and the admission remained part of the record.

---

[44] Phillips's attorney informed the trial court that Phillips would not advance a consent defense as part of his opposition to the State's motion to join Phillips's cases for trial. The court therefore issued a protective order in that context, ruling that Alaska Evidence Rule 404(b)(3) did not apply in this case (but that the cases were properly joined in any event). Ordinarily, however, there will be no need for a protective order with respect to the admission of *prior* offenses, so long as the defense is aware that advancing a consent defense at trial will open the door to the admission of evidence that the court has deemed admissible under Rule 404(b)(3).

[45] In the next section of this opinion, we address Phillips's claim that his attorney failed to consult with him about the protective order.

Phillips now claims that, after he testified that B.K. had consented to sex, his attorney should have moved for a mistrial rather than agreeing to the State's proposed curative instruction.

As with any other claim of ineffective assistance of counsel, there is a "presumption that trial counsel's actions were motivated by sound tactical considerations."[46] In its order denying Phillips's application for post-conviction relief, the superior court found that, faced with the choice to strike the testimony or allow evidence of Phillips's prior offenses to be admitted, the defense attorney made a reasonable tactical decision to acquiesce in the protective order. The superior court additionally noted that the defense attorney was not in a position to request a mistrial because his own client violated the protective order, which prejudiced the State, not Phillips.

Next, Phillips argues that his attorney's decision to acquiesce to the court's remedy of disregarding portions of Phillips's testimony was unreasonable because "[s]triking a witness's testimony will never enhance — and will only damage — that witness's credibility." He contends that the jury inevitably would have determined that the trial court struck Phillips's testimony because Phillips had lied or because he had seriously erred. He argues that his trial attorney should have requested a mistrial or objected to the court's proposed remedy.

But the trial court instructed the jury not to consider why the trial court ruled the way it did. As a general matter, jurors are presumed to follow the trial court's instructions,[47] and there is no reason to question that presumption here. Furthermore, even if striking a portion of Phillips's testimony reduced Phillips's credibility in the eyes of the jury, the testimony had forced the defense attorney to make a choice between

---

[46] *State v. Jones*, 759 P.2d 558, 569 (Alaska App. 1988).

[47] *Coffin v. State*, 425 P.3d 172, 175 (Alaska App. 2018) (citing *Whiteaker v. State*, 808 P.2d 270, 277 (Alaska App. 1991)).

two undesirable outcomes. Striking the testimony may have had some effect on the jury regarding Phillips's credibility, but the attorney could reasonably conclude that allowing evidence of Phillips's prior sexual assaults to be presented to the jury would have had an even more prejudicial impact.

Because Phillips did not demonstrate that he would have won a mistrial motion or that the defense attorney's agreement to strike his testimony was unreasonable, we conclude that the superior court properly denied this claim for relief.

*Why we reject Phillips's contention that the superior court erred in concluding that his trial attorney did not adequately prepare him to testify at trial*

Phillips's final argument is that his conviction must be reversed because his attorney did not adequately prepare him to testify at trial. In particular, Phillips challenges the superior court's factual finding that the defense attorney met with Phillips numerous times and that, during these meetings, they discussed (1) trial strategy, (2) the purpose for and parameters of Phillips's testimony, and (3) the existence of the protective order and the consequences for violating it.

In post-conviction relief litigation before the superior court, Phillips submitted an affidavit in which he declared that he was unaware of the protective order prohibiting him from raising a consent defense. He also claimed that he would have followed the protective order, had he known about it, and that he had no knowledge of his trial attorney's plan to concede guilt on a crime with a 99-year sentence. By contrast, the defense attorney submitted an affidavit in which he described meeting with Phillips to discuss trial strategy, the protective order, and the implications for Phillips's defense if he chose to testify.

After this, the defense attorney testified at the evidentiary hearing but Phillips did not. During the hearing, the defense attorney was unable to recall details about his representation of Phillips.

The superior court later relied on the defense attorney's affidavit in making its findings and in rejecting Phillips's contention that the defense attorney had not adequately prepared him to testify at trial.

Phillips contends that because the defense attorney did not recall the details of his preparation of Phillips when the attorney testified at the evidentiary hearing, the superior court erred by crediting the attorney's affidavit, rather than Phillips's affidavit, in making its factual findings.

But in this case, the defense attorney testified at the evidentiary hearing (while Phillips did not), and the superior court was able to view the attorney's demeanor and assess his credibility. Although the defense attorney did not remember much about his representation of Phillips during the hearing, the attorney had previously provided a very detailed affidavit addressing their pretrial discussions regarding strategy and Phillips's testimony.[48] During the hearing, the defense attorney confirmed that he had a better memory of the events at the time he prepared the affidavit and that the information in the affidavit was accurate. Under these circumstances, the superior court could reasonably credit the description of events provided by the attorney in his affidavit over the contrary description provided in Phillips's affidavit.

*Conclusion*

We REVERSE the superior court's order denying Phillips's application for post-conviction relief with regard to the count of second-degree sexual assault of B.K. in Case Number 2KB-09-00501 CR, and we remand this case to the superior court with instructions to vacate Phillips's conviction for that offense and to determine

---

[48] As we noted earlier, however, even though this affidavit detailed the attorney's pretrial discussions with Phillips, it did not include any indication that the attorney had consulted with Phillips about actually conceding guilt on the second-degree sexual assault count involving B.K.

whether the State will elect to retry Phillips. We AFFIRM the remainder of the superior court's order denying Phillips post-conviction relief.