NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: February 18, 2025

S25A0086.  GRIFFIN v. THE STATE.

WARREN, Justice.

Terry Griffin was convicted of malice murder, among other crimes, in connection with the shooting death of her boyfriend, Wesley Hudson. She appeals her conviction, arguing that her trial counsel "unilaterally abandoned [her] innocence" after the close of evidence "in favor of pursuing a lesser charge of voluntary manslaughter." Citing *McCoy v. Louisiana*, 584 U.S. 414 (138 SCt 1500, 200 LE2d 821) (2018), Griffin contends that trial counsel's actions violated her Sixth Amendment rights and that she is entitled to a new trial because the error is structural in nature. For the reasons that follow, we conclude that Griffin's claim fails, and we

therefore affirm.[1]

1. (a) Hudson was shot and killed on December 13, 2017, in the apartment he shared with Griffin. Griffin was inside the apartment when police officers responded to the shooting; she was arrested at the scene. The record shows that, from the beginning of Griffin's trial, her counsel advanced alternate defenses to the charges of malice and felony murder, and Griffin did not object to that strategy. Initially, counsel tried to lay the foundation for Griffin's preferred theory of self-defense. In his opening statement, counsel told the jury that Griffin would testify that, on the night of the shooting,

---

[1] The crimes occurred on December 13, 2017. In February 2018, a Fulton County grand jury indicted Griffin for malice murder, felony murder, aggravated assault with a deadly weapon, criminal damage to property in the first degree, and possession of a firearm during the commission of a felony. At a trial in December 2022, a jury found Griffin guilty of all counts. The court sentenced her to serve life in prison for malice murder and ten years to serve, consecutively, for criminal damage to property in the first degree. The court vacated the felony murder count, merged the aggravated assault with a deadly weapon count with the malice murder conviction, and suspended the sentence for possession of a firearm during the commission of a felony. **«V7-323»** Griffin filed a timely motion for new trial on September 20, 2022, which she later amended on March 8, 2024. After an evidentiary hearing, the trial court entered an order denying Griffin's amended motion on May 23, 2024. Griffin filed a timely notice of appeal on June 5, 2024. The case was docketed to the term of this Court beginning in December 2024 and submitted for a decision on the briefs.

Hudson "tried to force sex on" Griffin, that he threatened her with a gun, and that the evidence would show that "there was a tussle," "a discharge," and afterwards Griffin "was in shock." Continuing with his opening statement, counsel asked the jury to consider, in the alternative, convicting Griffin on the lesser charge of voluntary manslaughter, arguing that "something went wrong in that apartment on that night, but it was not malice aforethought."

To support this alternative theory, counsel relied, in part, on the testimony of Hudson's neighbor, who testified that, on the night of Hudson's death, she heard "a woman . . . screaming . . . as if someone was being slammed against the wall, and then she heard a gun fired." Counsel elicited testimony from a witness who testified that Hudson "liked the women" and that "cheating . . . on his part" led to conflict in his relationship with Griffin. And counsel elicited testimony that, based on the witness's interactions with Griffin, "[Griffin] seemed like a nice person" and that conflict in Griffin and Hudson's relationship "probably triggered them to have their differences . . . that night of [Hudson's] death."

3

Counsel initially requested jury instructions on both self-defense and voluntary manslaughter. But at the first charge conference, counsel conceded that "self-defense is a stretch, especially if [Griffin] doesn't testify." After the State finished presenting its case in chief, Griffin decided not to testify, and the trial court determined that there was not enough evidence to support giving the jury a self-defense instruction.

In his closing argument, counsel focused on Griffin's voluntary manslaughter defense, telling the jury, "[W]hat happened in the apartment was tragic, but it wasn't malice murder," and argued that what transpired in Hudson's apartment was in the "[h]eat of passion, not malice aforethought, not a malignant and angry mind." Nevertheless, counsel also alluded to the self-defense theory, asserting during closing argument that "[Hudson] grabbed [Griffin] by the neck, and she is screaming and slammed against the wall, and she puts the gun and fires, then he keeps coming." Counsel concluded by asking the jury to find Griffin not guilty on all five counts in the indictment. The trial court did give the jury an

instruction on voluntary manslaughter, and the jury convicted Griffin on all counts, including malice murder and felony murder.

(b) Represented by new counsel, Griffin filed a motion for new trial on September 20, 2022, which she later amended on March 8, 2024. In her motion, Griffin contended that, because counsel "abandoned" her self-defense claim at the end of the trial, Griffin "was denied her right to maintain her innocence and assert her chosen defense" under *McCoy*, in which the United States Supreme Court held that under the Sixth Amendment, "a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty," and that "counsel may not admit [his] client's guilt of a charged crime over the client's intransigent objection to that admission." See 584 U.S. at 417, 426.[2] At the motion for new trial hearing, counsel testified

---

[2] In her amended motion for new trial, Griffin asserted a *McCoy* claim based on her "right to maintain her innocence and assert her chosen defense in accordance with the Sixth Amendment." She also claimed that her trial counsel provided ineffective assistance under *Strickland v. Washington*, 466

5

that, despite his earlier efforts to develop a self-defense claim, he decided to "change strategy from self-defense to voluntary manslaughter" after Griffin decided not to testify at trial because without Griffin's testimony, "there was no argument with regard to self-defense because only two people were in the apartment" and "no one else could testify as to the self-defense [claim]." Given that he "didn't believe that based on the State's evidence that there was [proof] of malice," and believing that the evidence supported a lesser charge of voluntary manslaughter, counsel "moved forward with" that theory. He testified that the decision to "change strategy from self-defense to voluntary manslaughter" was his alone and that he had not discussed the decision with Griffin at any point in the trial.

In its May 23, 2024 order, the trial court concluded that Griffin had failed to show that she was entitled to a new trial under *McCoy* because counsel "did not concede [Griffin's] guilt to the charges

U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984), in a number of ways. The trial court denied both claims. Because Griffin has not raised the ineffective assistance of counsel claims in her brief to this Court, we deem them abandoned. See *Bannister v. State*, 306 Ga. 289, 297 n.7 (830 SE2d 79) (2019).

alleged" and because Griffin had failed to show that she had made an "intransigent and unambiguous objection" to counsel's shift in strategy.

2. On appeal, Griffin's sole enumeration of error is that her trial counsel made a "*McCoy*-style error" by "unilaterally abandon[ing]" her innocence "at the end of trial in favor of pursuing a lesser charge of voluntary manslaughter."[3]

(a) In *McCoy*, the defendant was charged with three counts of murder, and the State sought the death penalty. Throughout trial, the defendant "vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt." Id. at 417. At the guilt stage of trial, the defendant instructed his counsel not to make a concession that defendant "was the killer," id.

---

[3] We are aware of no case in which this Court has applied *McCoy* in a non-capital case, and Griffin has cited none. Because Griffin's claim fails in any event, we assume (without deciding) for purposes of her appeal that *McCoy* applies to non-capital cases. But see *McCoy*, 584 U.S. at 433 (Alito, J., dissenting) ("[I]t is hard to see how the right could come into play in any case other than a capital case in which the jury must decide both guilt and punishment."). See also *Harris v. State*, 358 Ga. App. 802, 809 n.7 (856 SE2d 378) (2021) (assuming without deciding that *McCoy* "is not limited to capital cases"); *Pass v. State*, 361 Ga. App. 350, 354 n.3 (864 SE2d 464) (2021) (same).

at 418; counsel was aware of the defendant's "complete opposition to" counsel "telling the jury that [the defendant] was guilty of killing the three victims," id. at 419 (cleaned up); and the defendant "pressed [counsel] to pursue acquittal," id. When, during opening statements, counsel conceded the defendant's guilt by telling the jury that the defendant "was the cause of [the victims'] death[s]," the defendant "protested," telling the court "out of ear shot of the jury . . . that [counsel] was selling him out by maintaining that [the defendant] murdered his family." Id. (cleaned up). Then, during trial, the defendant "testified in his own defense, maintaining his innocence," even though the alibi he presented was "difficult to fathom." Id. at 420. The jury "returned a unanimous verdict of guilty . . . on all three counts." Id. During the penalty phase of trial, counsel "again conceded [defendant] committed these crimes but urged mercy in view of [his] serious mental and emotional issues," and the jury nonetheless "returned three death verdicts." Id. (cleaned up).

The United States Supreme Court concluded that, under the circumstances presented in that case, the defendant's rights under

8

the Sixth Amendment had been violated.[4] Specifically, it held that "[a]utonomy to decide that the objective of the defense is to assert innocence" is "reserved for the client" and "[w]hen a client expressly asserts that the objective of his defen[s]e is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt." See id. at 422-423 (cleaned up). Noting that the defendant had opposed counsel's "assertion of [] guilt at every opportunity, before and during trial, both in conference with his lawyer and in open court," id. at 424, the Court concluded that the defendant's Sixth Amendment rights had been violated and that because a "violation of a defendant's Sixth Amendment-secured autonomy" constitutes "structural error," the Court's ineffective-assistance-of-counsel jurisprudence under *Strickland v. Washington,* 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984), did not apply. 584 U.S. at 427.

(b) We begin our analysis by assuming, without deciding, that

---

[4] The Sixth Amendment to the United States Constitution provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI.

9

trial counsel "conceded" Griffin's guilt in the same manner that trial counsel did in *McCoy*. See id. at 423 ("When a client expressly asserts that the objective of his defen[s]e is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt[.]") (cleaned up). Even so, we conclude that Griffin's claim fails because the record does not support her contention that she made an "intransigent and unambiguous objection" to counsel's assumed concession like the defendant did in *McCoy*. See 584 U.S. at 426 ("[C]ounsel may not admit [his] client's guilt of a charged crime over the client's intransigent objection to that admission.").

On appeal, Griffin does not argue that she made the type of "intransigent and unambiguous objection" the defendant in *McCoy* made. Instead, she contends that "an in-court interruption of proceedings in front of a jury cannot be a standard or procedural requirement for every defendant when asserting a *McCoy* claim," and asserts that she "nonetheless left no ambiguity in her maintenance of innocence." On that point, she contends that her

"maintenance of innocence and insistence on her chosen defense can be found in multiple parts of the record, including not only her plea of 'not guilty,' but also trial counsel's opening statement at trial laying out [Griffin's] claim of self-defense and maintenance of innocence, and the trial attorney's testimony at the motion for new trial hearing," during which counsel testified that he "alone chose to concede guilt and did not discuss this decision with [Griffin] beforehand."

We disagree that the showing Griffin has made is sufficient to establish the Sixth Amendment violation the defendant suffered in *McCoy*. That is because the record does not show that Griffin made the type of "intransigent and unambiguous objection" the defendant made in *McCoy*. In reaching that conclusion, we need not (and do not) attempt to define the parameters of what types, or how much, record evidence is necessary for a defendant to satisfy whatever *McCoy* requires with respect to showing an "intransigent and unambiguous objection." Instead, we conclude that whatever must be shown for a defendant to avail herself of a claim under *McCoy*

11

with respect to establishing an "intransigent and unambiguous objection" has not been shown here. Indeed, the record evidence Griffin points to—her plea of "not guilty," trial counsel's advancement of Griffin's self-defense claim and her "maintenance of innocence," and trial counsel's testimony at the motion-for-new-trial hearing—is unlike the defendant's "vociferous[] insiste[nce] that he did not engage in the charged acts," and defendant's "adamant[] object[ion] to any admission of guilt, 584 U.S. at 417, which he made "at every opportunity, before and during trial, both in conference with his lawyer and in open court."  Id. at 424.

Because Griffin has not shown that she made an "intransigent and unambiguous objection" to the concession of guilt we have presumed her counsel made, see id. at 420, her *McCoy* claim fails.

*Judgment affirmed.  All the Justices concur.*