# Supreme Court of Florida

———————

No. SC2025-1722

———————

**RICHARD BARRY RANDOLPH,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

———————

No. SC2025-1723

———————

**RICHARD BARRY RANDOLPH,**
Petitioner,

vs.

**SECRETARY, DEPARTMENT OF CORRECTIONS,**
Respondent.

November 13, 2025

PER CURIAM.

Over thirty-five years ago, Richard Barry Randolph murdered Minnie Ruth McCollum.  For this crime, he was sentenced to death.  Recently, Governor Ron DeSantis signed a warrant directing that

Randolph's death sentence be carried out. The date scheduled for his execution is November 20, 2025.

Following issuance of the death warrant, Randolph filed a motion for postconviction relief, which the circuit court summarily denied. Randolph appeals that ruling as well as the denial of his numerous demands for public records. Aside from asserting circuit court error, Randolph urges us to issue a writ of habeas corpus and thereby vacate his conviction and death sentence. We find that none of Randolph's arguments warrant relief. As such, we affirm the circuit court's orders and deny his habeas petition. In light of those conclusions, we decline to stay Randolph's execution or hold oral argument.[1]

I

In 1988, Randolph broke into a convenience store located in Palatka, Florida. Familiar with the store's routine from his past employment there, Randolph hoped to steal money from the safe while the manager was outside checking the gas pumps. However, things did not go according to plan.

---

1. Our jurisdiction in this case comes from article V, section (3)(b)(1) and (b)(9) of the Florida Constitution.

McCollum, the store manager, saw Randolph inside the store. When confronted by McCollum, Randolph commenced a brutal and prolonged attack on her. He forced her into the back room where he repeatedly bashed her in the head with his bare hands, causing her to "quiet down." As he was trying to open the safe, McCollum started moving again. In response, Randolph used a drawstring from his sweatshirt to strangle her until she stopped moving.

With Randolph still inside the store, McCollum regained consciousness and started to scream. As he had done before, Randolph beat her until she became quiet. But when she started making noises again, Randolph grabbed a small knife and stabbed her in the neck multiple times. He then removed McCollum's clothing from the waist down and raped her.

As Randolph was leaving the store, a customer and two custodians asked him about McCollum's whereabouts. After lying to them, Randolph drove off in McCollum's car. With Randolph gone from the scene, the customer and custodians looked through a store window, observing physical indicia of what had transpired inside the store. This prompted them to call the police. When law enforcement eventually entered the store, they found McCollum on

the floor—partially unclothed, bleeding from her head and neck, and moaning in pain. She died six days later from the injuries described above.

Meanwhile, after leaving the store, Randolph drove to his girlfriend's home and told her about the incident. He was arrested later that day in Jacksonville. Following his arrest, Randolph gave a detailed confession during an interview with two detectives.

Based on these and other facts, the State charged Randolph with first-degree murder and three other related crimes. A jury found him guilty as charged on all counts and, following a penalty-phase hearing, recommended a sentence of death by a majority vote. Accepting that recommendation, the circuit court sentenced Randolph to death. In reaching this decision, the court found four aggravating circumstances, including that the murder was especially heinous, atrocious, or cruel.

Randolph appealed, raising both guilt- and penalty-phase claims. But we affirmed in all respects. *Randolph v. State*, 562 So. 2d 331, 332, 339 (Fla. 1990). Following the U.S. Supreme Court's denial of discretionary review, *Randolph v. Florida*, 498 U.S. 992 (1990), Randolph began his postconviction challenges. He first

- 4 -

sought relief in Florida state court. After years of litigation, the circuit court ultimately denied Randolph's initial postconviction motion. We affirmed that ruling and denied Randolph's accompanying habeas petition. *Randolph v. State*, 853 So. 2d 1051, 1054 (Fla. 2003). In the years that followed, Randolph mounted additional challenges to his convictions and death sentence—seeking relief in both state and federal court. No court granted him relief. *Randolph v. Crosby*, 861 So. 2d 430 (Fla. 2003) (table decision) (denying habeas petition); *Randolph v. McNeil,* 590 F.3d 1273, 1275 (11th Cir. 2009) (affirming denial of federal habeas petition), *cert. denied, Randolph v. McNeil,* 562 U.S. 1006 (2010); *Randolph v. State*, 91 So. 3d 782, 782 (Fla. 2012) (affirming denial of first successive postconviction motion); *Randolph v. State*, 320 So. 3d 629, 631 (Fla. 2021) (affirming denial of second successive postconviction motion); *Randolph v. State*, 403 So. 3d 206, 207 (Fla. 2024) (affirming denial of third successive postconviction motion).

On October 21, 2025, the Governor issued Randolph's death warrant. Randolph then filed the motion at issue in this appeal—his fourth successive postconviction motion, which raised three claims for relief.

For his first claim, he asserted that the three drugs currently used to accomplish lethal injection would result in a torturous death due to his lupus, a chronic autoimmune disease. To support this claim, Randolph attached a report by Dr. Joel Zivot, which opined that Randolph's lupus would cause him severe pain when he is "[p]osition[ed]" for the execution. In addition, Dr. Zivot alleged that when the lethal chemicals are injected, Randolph would essentially drown in his own blood.

The crux of Randolph's second claim was that the shortness of the warrant period—coupled with adverse rulings on his requests for public records—deprived him of a full and fair postconviction proceeding. As his third and final claim, Randolph asserted that the process which led to the denial of clemency in his case did not accord with constitutional norms. Specifically, he was not allowed to respond to certain findings, nor authorized to seek a revised decision that accounts for additional mitigation procured after the clemency investigation ended.

The circuit court, after holding a case management conference, denied the motion without conducting an evidentiary hearing. The court ruled that the method-of-execution claim was

untimely, procedurally barred, and lacked merit. As for the challenges to the warrant period and clemency process, the court determined that these claims lacked merit as a matter of law. Randolph now appeals. He has also separately filed with us a petition for writ of habeas corpus and requested a stay and oral argument.

## II

We begin with Randolph's appeal in which he argues that the circuit court abused its discretion in denying his public-records request and erred in summarily denying his three substantive claims. We disagree in all respects.

## A

As a threshold issue, Randolph asserts entitlement to a reversal based on the circuit court's denial of his numerous demands for public records. However, applying our deferential abuse-of-discretion standard of review, *see Hutchinson v. State*, 416 So. 3d 273, 279 (Fla.), *cert. denied*, 145 S. Ct. 1980 (2025), we affirm.

The circuit court gave several reasons for rejecting Randolph's records requests, including that some of his requests were overly

broad and constituted impermissible fishing expeditions; some were not reasonably related to a viable claim; and still others sought confidential, non-discoverable records. We conclude that these justifications align with our case law on public records in the post-warrant context. *Bates v. State*, 416 So. 3d 312, 321 (Fla.), *cert. denied*, No. 25-5370, 2025 WL 2396797 (U.S. Aug. 19, 2025); *Zakrzewski v. State*, 415 So. 3d 203, 213 (Fla.), *cert. denied*, No. 25-5194, 2025 WL 2155601 (U.S. July 30, 2025); *Jones v. State*, 50 Fla. L. Weekly S259, S261 (Fla. Sept. 24), *cert. denied*, No. 25-5745, 2025 WL 2775490 (U.S. Sept. 30, 2025). And we further conclude that the rulings were sensible and supported by the facts in the record.

Within this issue, Randolph advances some constitutional challenges to Florida Rule of Criminal Procedure 3.852, which governs the production of public records in capital postconviction proceedings. Randolph's challenges to this rule are not new to us. Capital defendants in Randolph's position have asserted violations of numerous constitutional provisions, including the ones Randolph now invokes. But we have rejected all such challenges, finding them meritless under both state and federal law. *See, e.g.,*

*Hutchinson*, 416 So. 3d at 279 (due process and equal protection); *Gudinas v. State*, 412 So. 3d 701, 715 (Fla.) (access to courts), *cert. denied*, 145 S. Ct. 2833 (2025); *Lambrix v. State*, 124 So. 3d 890, 895 n.2 (Fla. 2013) (access to public records). Randolph has not advanced any argument giving us reason to doubt our rule 3.852 precedent.

## B

We now turn to the denial of Randolph's three substantive claims, which we review de novo. *Hutchinson*, 416 So. 3d at 279. Consistent with that standard, "we will affirm the denial of successive claims that are procedurally barred, untimely, legally insufficient, or refuted by the record." *Bates*, 416 So. 3d at 319 (citing *Hutchinson*, 416 So. 3d at 279). Under this framework, we conclude that the circuit court's summary denial of Randolph's three claims was warranted.

## 1

As noted above, Randolph asserted a method-of-execution claim. The circuit court found it was untimely, procedurally barred, and legally insufficient. We entirely agree.

Randolph's method-of-execution claim was not timely raised. To be timely, a postconviction claim must be asserted within one year of when the capital defendant's conviction and sentence became final. Fla. R. Crim. P. 3.851(d)(1). Undeterred by this limitation, Randolph relies on an exception which applies to claims predicated on facts "unknown" or those that "could not have been ascertained by the exercise of due diligence." Fla. R. Crim. P. 3.851(d)(2)(A). However, even when based on facts meeting this demanding standard, the claim must still be filed within a year of when those facts became discoverable. *Bates*, 416 So. 3d at 319.

Here, Randolph concedes that he was diagnosed with lupus in 1990 and has had the disease his entire life. Moreover, the current three-drug protocol has remained essentially unchanged since 2017. That being the case, the facts on which this claim is predicated have been available since at least 2017. Randolph's current claim was raised eight years later and is thus untimely. *See Tanzi v. State*, 407 So. 3d 385, 392 (Fla.), *cert. denied*, 145 S. Ct. 1914 (2025); *Rogers v. State*, 409 So. 3d 1257, 1267-68 (Fla.), *cert. denied*, 145 S. Ct. 2695 (2025); *Cole v. State*, 392 So. 3d 1054, 1064 (Fla.), *cert. denied*, 145 S. Ct. 109 (2024).

Also, for the reasons identified above, Randolph's claim is procedurally barred. That is because he could have raised the claim earlier but failed to do so. *See Bates*, 416 So. 3d at 320 (enforcing procedural bar where claims could have been raised in earlier postconviction proceedings).

Lastly, Randolph's claim lacks merit as a matter of law. To succeed on his as-applied method-of-execution claim, Randolph must "(1) establish that the method of execution presents a substantial and imminent risk that is sure or very likely to cause serious illness and needless suffering and (2) identify a known and available alternative method of execution that entails a significantly less severe risk of pain." *Cole*, 392 So. 3d at 1065 (quoting *Asay v. State*, 224 So. 3d 695, 701 (Fla. 2017)). While we have significant doubts about the legal sufficiency of the first prong, we need not address that here because Randolph fails on the second prong. He asserts that a different combination of drugs or a firing squad are qualifying alternatives. Consistent with our recent death-penalty jurisprudence, we hold that neither of Randolph's proposed methods "could be 'readily implemented,' or in fact significantly reduces the substantial risk of severe pain, given the physical

- 11 -

conditions he describes." *Tanzi*, 407 So. 3d at 393; *see Rogers*, 409 So. 3d at 1268.

In short, the circuit court did not err in denying this claim.

2

Next, Randolph claims that certain limitations on his post-warrant litigation deprived him of a full and fair postconviction proceeding in contravention of basic constitutional safeguards. In particular, Randolph underscores the compactness of the warrant period (being thirty days), and the circuit court's adverse rulings on his demands for public records. We have repeatedly rejected arguments of this sort. *Bates*, 416 So. 3d at 321 (rejecting argument that a thirty-day warrant period—coupled with the denial of all demanded public records—deprived the defendant of due process and right to counsel); *Tanzi*, 407 So. 3d at 390 (rejecting due-process challenge despite "the truncated warrant period and the denial of his public records requests"); *Hutchinson*, 416 So. 3d at 279-80 (rejecting due-process challenge where, despite condensed warrant period, defendant had fair opportunity to raise claims and advance argument in support of them). The fact that

Randolph invokes more constitutional provisions (or a different combination of them) does not change our analysis.[2]

Accordingly, we agree with the circuit court's summary denial of this claim.

3

Randolph also claims that the clemency process in his case violated at least four provisions of the federal and state constitutions. This claim lacks merit. As we understand it, Randolph's claim depends on two core premises. First, that he is entitled to rebut any factual findings by the decision-maker that Randolph deems wrong or unsupported. And second, he is entitled to an updated clemency proceeding due to the amount of time that has passed since his 2014 clemency investigation. But our precedent is inconsistent with both premises.

---

2. The State also suggests that this claim is untimely and procedurally barred. It is not clear to us how the defendant could possibly litigate the length and circumstances of his future warrant period in advance of the warrant's issuance. To the best of our knowledge, we have never held otherwise. At the very least, the cases cited by the State do not convince us that this claim should be denied on procedural grounds.

In a recent decision, we squarely rejected the argument that a capital defendant has the "right to review and rebut the evidence" underlying the rejection of clemency relief. *Bates*, 416 So. 3d at 320-21. And we have long rejected the argument that a capital defendant has a right to an updated investigation where significant time elapses from the original investigation and the clemency denial. *See Jennings v. State*, 50 Fla. L. Weekly S289, S291 (Fla. Nov. 6) (citing cases decided in 1986, 2010, and 2012 in support of rejection of clemency-based claim), *cert. denied*, No. 25-6061, 2025 WL 3157365 (U.S. Nov. 12, 2025).

Accordingly, we hold that the circuit court correctly denied the claim.

III

We now consider Randolph's habeas petition, which raises one constitutional claim. Specifically, Randolph asserts that trial counsel violated his Sixth Amendment right to decide the objectives of his defense by repeatedly conceding guilt without expressly obtaining his consent to that strategy. In making this claim, Randolph relies on the U.S. Supreme Court's decision in *McCoy v. Louisiana*, 584 U.S. 414, 420 (2018) (holding that the Sixth

Amendment is violated when defense counsel concedes guilt over "the defendant's intransigent and unambiguous objection"). We conclude that this claim does not justify vacating Randolph's conviction or death sentence.

First, this claim fails on procedural grounds. *McCoy* was decided in 2018. And the trial transcript—which serves as the factual basis for the claim—has been available since Randolph's direct appeal in 1990. Yet, Randolph waited until 2025 and after the death warrant's issuance to raise the claim. That was some seven years after the claim could have first been raised. We thus conclude that his habeas claim is both untimely and procedurally barred. *Bates*, 416 So. 3d at 322; *Jones*, 50 Fla. L. Weekly at S262; *see also Thomas v. Payne*, 960 F.3d 465, 478 (8th Cir. 2020) (finding *McCoy* claim procedurally defaulted).

Randolph's claim also fails on the merits. We have said that a necessary element of a *McCoy* claim is that the defendant *expressly objects* to his attorney's concession of guilt. *Harvey v. State*, 318 So. 3d 1238, 1239 (Fla. 2021); *Atwater v. State*, 300 So. 3d 589,

591 (Fla. 2020).[3]  Further, we have declined to interpret *McCoy* as requiring counsel "to obtain the express consent of a defendant prior to conceding guilt."  *Harvey*, 318 So. 3d at 1239.

Here, in his petition, Randolph specifically acknowledges that he never expressed any objection to his counsel's concessions regarding certain crimes.  Pet. at 14 ("Mr. Randolph did not expressly object . . . .").  Nor was counsel required under *McCoy* to seek Randolph's express consent.  Consequently, Randolph cannot succeed on his *McCoy* claim.[4]

In sum, Randolph's sole habeas claim does not support relief.

## IV

For the reasons we have given above, we affirm the circuit court's challenged orders and deny Randolph's habeas petition.

---

3.  *Accord Commonwealth v. Alemany*, 174 N.E.3d 649, 668 (Mass. 2021); *State v. Chambers*, 955 N.W.2d 144, 149 (Wis. 2021); *Epperson v. Commonwealth*, 645 S.W.3d 405, 408 (Ky. 2021); *People v. Cuevas*, 558 P.3d 1041, 1047 (Colo. App. 2024); *Griffin v. State*, 912 S.E.2d 692, 695 (Ga. 2025); *White v. Comm'r of Corr.*, 236 Conn. App. 66, 82 n.9 (2025) (collecting cases).

4.  Our resolution of this claim makes it unnecessary for us to decide whether *McCoy* applies to claims raised by defendants, like Randolph, whose death sentences became final prior to *McCoy*'s issuance.

Having so ruled, we decline to order a stay of execution or hold oral argument. No motion for rehearing will be considered. The mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.
CANADY, J., recused.

An Appeal from the Circuit Court in and for Putnam County,
    Alicia R. Washington, Judge – Case No. 541988CF001357CFAXMX
And an Original Proceeding – Habeas Corpus

Suzanne Keffer, Capital Collateral Regional Counsel, James L. Driscoll, Assistant Capital Collateral Regional Counsel, Marie-Louise Samuels Parmer, Special Assistant Capital Collateral Regional Counsel, and Jeanine L. Cohen, Staff Attorney, Southern Region, Fort Lauderdale, Florida,

    for Appellant/Petitioner

James Uthmeier, Attorney General, Tallahassee, Florida, Jennifer A. Davis, Senior Assistant Attorney General, Miami, Florida, and Christina Z. Pacheco, Special Counsel, Assistant Attorney General, Tampa, Florida,

    for Appellee/Respondent